# Exhibit 6

**ORIGINAL**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL ~~16~~ 2020 ★
📷14

**BROOKLYN OFFICE**

In the United States District Court
Eastern District of New York

| | |
|---|---|
| Michael Krichevsky | ) CIVIL DOCKET No: 1:20-cv-02343-RRM |
| ) | |
| Plaintiff | ) CHAPTER 11 CASE No. "19-43516-ess" |
| ) | |
| ) | |
| US Bank, NA, Wells Fargo Bank NA) | |
| WOODS OVIATT GILMAN, LLP ) | |
| Brittany J. Maxon, Esq. ) | |
| Aleksandra K. Fugate, Esq. ) | |
| David B. Wildermuth, Esq. ) | |
| Donald W. O'Brien, Jr., Esq. ) | |
| Charice Gladden ) | |
| FRENKEL LAMBERT WEISS ) | |
| WEISMAN GORDON, LLP ) | |
| Elizabeth S. Stong, Esq. ) | |
| Defendants ) | |



**NOTICE OF MOTION TO SET ASIDE ORDER PER FRCP RULE 60 AND OTHER
ALTERNATIVE RELIEF**

C O U N S E L O R S :

PLEASE TAKE NOTICE, that upon my annexed supporting affidavit and memorandum

of law, I, Michael Krichevsky, will move at the United States District Court, located at 225

Cadman Plaza East, Brooklyn, NY 11201 on the future date to be determined by the court, or as

soon thereafter as Counsel may be heard, for an Order to Vacate and Set Aside order of Judge

Elizabeth S. Stong on the following grounds:

- a) (1) lack of subject-matter jurisdiction;
- b) (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
- c) (4) the order is void;
- d) (5) applying it prospectively is no longer equitable; or
- e) (6) Fraud upon the court by officers of the court;
- f) (6) the debt has been satisfied, released, or discharged;
- g) (6) res judicata and/or claim preclusion;
- h) (6) judicial estoppels;
- i) (6) statute of limitation run;
- j) (6) failure to join a party under Rule 19;

k) (6) violation of Bankruptcy Rules 9001 and 6009 by opposing party, opposing attorneys and judge.

l) (6) Conspiracy and Obstruction of Justice;

m) (6) lack of constitutional authority to issue the order.

Dated: Brooklyn, New York
      July 14, 2020

Michael Krichevsky, DIP
4221 Atlantic Ave
Brooklyn, New York  11224
(718) 687-2300

In the United States District Court
Eastern District of New York

| | | |
|---|---|---|
| Michael Krichevsky | ) | CIVIL DOCKET No: 1:20-cv-02343-RRM |
| | ) | |
| Plaintiff | ) | CHAPTER 11 CASE No. "19-43516-ess" |
| | ) | |
| US Bank, NA, Wells Fargo Bank NA | ) | |
| WOODS OVIATT GILMAN, LLP | ) | |
| Brittany J. Maxon, Esq. | ) | |
| Aleksandra K. Fugate, Esq. | ) | |
| David B. Wildermuth, Esq. | ) | |
| Donald W. O'Brien, Jr., Esq. | ) | |
| Charice Gladden | ) | |
| FRENKEL LAMBERT WEISS | ) | |
| WEISMAN GORDON, LLP | ) | |
| Elizabeth S. Stong, Esq. | ) | |
| Defendants | ) | |

## AFFIDAVIT IN SUPPORT OF FRCP RULE 60 MOTION

I, Michael Krichevsky, Appellant and DIP, under penalty of perjury respectfully aver as follows:

1.    I am the Debtor in Possession in the underlying bankruptcy chapter 11 case.

2.    I make this affidavit in support of my motion to Vacate and Set Aside highly irregular order of Bankruptcy Court Judge Elizabeth S. Stong, **Exhibit 1**.

3.    I have a God given rights to Liberty, Property and Pursuit of Happiness. To defend these rights from violation, I have been litigating and investigating public corruption as whistleblower and victim since 2008 and obtained a lot of experience. Therefore, the averments in this affidavit based upon my firsthand knowledge, firsthand research, and firsthand experience in foreclosure defense litigation from 2009; upon information, documentary evidence provided to me by others in my capacity as investigator and whistleblower of public corruption; and upon inferences and conclusions reached from said information and belief.

4.    In fact, I am the only one amongst people involved in underlying action with *first-hand*

*knowledge* to lawfully sign *non-hearsay, admissible affidavit* without intention to mislead the court or judge, harass opponent and without creating perjury and/or fraud upon the court.

## INTRODUCTORY STATEMENT

5.    The short of it is alleged debt is paid off or extinguished by my money. But, because this is court, introduction is going to be longer because this controversy is going back to 2005 and 2008 until present. It involves *fraud* and *barratry* with numerous events and smaller *false made up* controversies within, complicated and sophisticated Shell games using laws of trust and agency; scams and fraud using, implied by claimant, securitization of the debt. I use "implied," because there was/is no affirmative court pleading about securitization of my alleged debt. This, I am sure, done for some ill, nefarious reason, which this action aimed to unravel.

6.    Sidney Powell, Esq. criminal defense attorney of General Michael Flynn who was framed by FBI and DOJ, wrote a book "Licensed To Lie" (available on Amazon) where she exposed how attorneys use their license to practice law as a tool to commit perjury for profit. In this book, she presents several examples of these crimes. This case is another chapter with evidence to support her book. On April 28, 2020 in interview on Fox Business, she called prosecuting attorneys from DOJ "hit squad." In instant case, I am against the "hit squad" too.

7.    Amazingly, here comes the judge who refuses to sign DOJ motion to dismiss charges. The whole world knows that the judge is democrat, political activist and co-conspirator against Flynn. Here is the headline news: "Judge Emmet Sullivan of the DC District Court asked the full appeals court on Thursday to reconsider whether he has power to review a Department of Justice decision to drop the prosecution." Having no choice, Powell filed a writ of mandamus. This Circus Circus pretty much resembles my case where Judge Elizabeth S. Stong plays the role of Judge Emmet Sullivan in General Flynn's case.

**Silence is an act of complicity and collusion – willful ignorance of truth is not bliss**

8.      This case is about paid off debt, contract, documents, duty, honor, trust, law, equity and

corruption – and about premise or proposition that future proves past. In my case future failed

acts or omissions support affirmative defense of legal doctrines of Estoppels and Res Judicata to

name a few. In regard to Res Judicata, I will show the court that my procedural and substantive

due process rights were constantly violated by opposing attorneys, while they had full and fair

opportunity to litigate on the merits. Surprisingly, they declined that opportunity and requested

Judge Bunyan to rule on their motion to dismiss foreclosure action, which he did in 2015.

9.      Currently, I am financially destroyed and damaged man by four state's underlying

lawsuits sprang up from 2009. These lawsuits constitute harassment, fraud and frivolous

litigation, not to mention human trafficking, instituted by Wells Fargo Bank, NA or other

shadow entity; or entities from 2009 using three notorious foreclosure mills: STEVEN J. BAUM,

P.C., FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP and WOODS OVIATT

GILMAN, LLP.

## PARTIES TO APPEAL

10.      Plaintiff, Michael Krichevsky, Debtor In Possession with properties and business located

in the Eastern District of New York at 4219 and 4221 Atlantic Ave., Brooklyn, NY.

11.      U.S. Bank, NA is a nominal Defendant and appears to be connected to Wells Fargo Bank

NA and WOODS OVIATT GILMAN, LLP's fraud and conspiracy against me.

12.      Wells Fargo bank, NA is Defendant because, upon information and belief derived from

**Exhibit A**, it serves WOODS OVIATT GILMAN, LLP as client in fraud and conspiracy to

defraud against me. It states there "CLIENT ID: Woods."

13.    WOODS OVIATT GILMAN, LLP is international foreclosure mill, not a professional

attorney's entity under New York law.

14.    Upon information and belief, WOODS OVIATT GILMAN, LLP connected with

international bankers, and therefore is in violation of Foreign Agents Registration Act.

15.    WOODS OVIATT GILMAN, LLP is defendant here because of its actions as a party-

claimant – not as attorney firm representing a client. In fact, I am confident that this partnership

is a bulk "debt buyer" acting Pro Se under guise of representing a client – when in reality it is a

client.

16.    This partnership with its attorneys act as a "hub-and-spoke" of conspiracy against me.

See *United States v. Borelli*, 336 F. 2d 376 (1964): "Courts often conceptualize single

conspiracies using either a "chain" or a "hub-and-spoke" metaphor."

17.    Brittany J. Maxon, Esq. is Defendant as employee of WOODS OVIATT GILMAN, LLP.

Originally, her status was nonparty, but later on, she proved to be a party by her concerted

actions.

18.    Brittany J. Maxon, Esq. is a "spoke" of "hub" of fraud and conspiracy against me.

19.    Aleksandra K. Fugate, Esq., is Defendant as employee of WOODS OVIATT GILMAN,

LLP. Originally, her status was nonparty, but later on, she proved to be a party by her concerted

actions.

20.    Aleksandra K. Fugate, Esq. is a "spoke" of "hub" of fraud and conspiracy against me.

21.    David Bruce Wildermuth aka David B. Wildermuth, Esq. is Defendant as employee of

WOODS OVIATT GILMAN, LLP.

22.    Originally, his status was nonparty, but starting from state foreclosure action in 2016

against me, he proved to be a party by his concerted actions.

23.    David B. Wildermuth, Esq. is a "spoke" of "hub" of fraud and conspiracy against me.

24.    Donald W. O'Brien, Jr., Esq. is Defendant as employee and/or partner of WOODS

OVIATT GILMAN, LLP.

25.    Originally, his status was nonparty, but starting from state foreclosure action in 2016

against me, he proved to be a party by his concerted actions.

26.    Donald W. O'Brien, Jr., Esq. is a "spoke" of fraud and conspiracy to defraud against me.

27.    All attorneys from WOODS OVIATT GILMAN, LLP acted as "spokes" of the WOODS

OVIATT GILMAN, LLP (wheel or hub) of "chain" conspiracy against me. See *Bolden v. State*,

410 A. 2d 1085 (1980) where Judge eloquently explained, "A "wheel" conspiracy is shown when

a number of people (the spokes) are engaged in similar relationships with the same individual

(the hub). The "chain" conspiracy is characterized by different activities carried on with the same

subject of a conspiracy in such a manner that each conspirator in a chain-like manner performs a

separate function which serves in the accomplishment of the overall conspiracy. *United States v.

Perez*, 489 F.2d 511 (5th Cir.1973)." Subject of the fraud and conspiracy against me is to use the

court and judge to deprive me of approximately $1,700,000 property and enrich all involved in it.

28.    Charice Gladden is Defendant as employee and Robo Witness of Wells Fargo Bank, NA.

Upon information and belief derived from public records, she worked for Citibank as

Bankruptcy Specialist from September 8, 2015 until April 2, 2019. Accordingly, she started

work for Wells Fargo less than a year ago, and therefore could not have any personal knowledge

about Bank records from 2005, not to mention her lack of qualification as expert witness and

forensic examiner to testify about authenticity of note, mortgage and my signature. Accordingly,

she is a "spoke" of fraud and conspiracy against me.

29.     FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP is Defendant and

conspirator connected with US bank, NA, Wells Fargo bank NA and WOODS OVIATT

GILMAN, LLP's fraud and conspiracy to defraud against me.

30.     In 2015, during foreclosure litigation in State court they filed motion to dismiss

foreclosure against me while I requested a jury trial.

31.     I had an option to oppose their motion to dismiss and proceed to trial – where I would

have exposed *their knowledge* of Wells Fargo's fabricated note, mortgage and assignments.

32.     At that time, during a hearing their attorney pleaded that I do not oppose their motion to

dismiss foreclosure and let them "save their face" under promise that their client will never

bother me again.

33.     Upon information and belief, FRENKEL LAMBERT WEISS WEISMAN GORDON,

LLP immediately thereafter sold or transferred their fictitious claims against me together with

fabricated note, mortgage, assignments and their full "in house" litigation file to WOODS

OVIATT GILMAN, LLP after statute of limitation to collect on the alleged debt has run.

34.     FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP is a "spoke" of fraud and

conspiracy to defraud against me.

35.     Elizabeth S. Stong, Esq. is Defendant as a fellow member of New York State Bar

Association and/or fellow member of the bankruptcy committee of the Brooklyn Bar

Association, and accordingly connected to FRENKEL LAMBERT WEISS WEISMAN

GORDON, LLP and WOODS OVIATT GILMAN, LLP's fraud and conspiracy against me.

36.     As a federal judge and a member of New York State Bar associations, she has conflict of

interest and violates separation of powers doctrine

37.     In addition, upon information and belief derived from public records, Stong's husband, John Shaw Cassidy, is an attorney for the Federal Reserve Bank through which Stong is connected with U.S. Bank NA and Wells Fargo bank NA – egregious conflict of interest. As such, she should not be presiding as judge in any bankruptcy case involving any bank member of the Federal Reserve Bank.

38.     According to her biography published on the website of Eastern District of New York Bankruptcy Court she is a member of the Council on Foreign Relations and the ABA Standing Committee on Pro Bono and Public Service and also serves as a member of the Council of the American Law Institute, the Board of Trustees of the Practicing Law Institute, the Board of Directors of the International Insolvency Institute, and the Board of Directors of P.R.I.M.E Finance. She is also the Co-Chair of the New York City Bar's Council on the Profession, and Co-Chair of the New York Fellows of the American Bar Foundation. Judge Stong represents the American Bar Association Judicial Division's National Conference of Federal Trial Judges in the ABA's House of Delegates, and also serves on the ABA's Standing Committee on Pro Bono and Public Service and the Council of the ABA Business Law Section. In October 2016, she will serve as Honorary Chair of Mediation Settlement Day, a nationwide event that she helped to establish in 2001.

39.     As Council on Foreign Relations, she acts as political operator and activist-judge in violation of the code of judicial conduct. As a member of the Board of Directors of the International Insolvency Institute, she appears to be acting as an activist-judge and lobbyist in violation of the Foreign Agents Registration Act. I cannot help myself, but wonder if any member of attorney firms involved in this conspiracy is also a member of International Insolvency Institute. To sum up Judge Stong's extrajudicial activities, she is Globalist, Socialist

and political activist with numerous conflicts of interest, and therefore evidently violated her

oath of office to support the Constitution of United States of America. As such, she did not have

constitutional authority to preside over my case.

40.    Given the fact that Judge Stong Obstructed Justice by depriving me of honest services

and due process, she is a "spoke" of fraud and conspiracy to defraud against me.

THE SCHEME AND MODUS OPERANDI OF FRAUD AND CONSPIRACY TO DEFRAUD

**Logical thinking and application of LAW and EQUITY**

41.    To demonstrate my logical thinking and application of the law and equity to issues

involved, I will use over simplified, hypothetical "what if" law school scenarios below to frame

the fundamental issues and unravel this unique, invented, false controversy. These issues remain

evidentially unresolved due to prevention of my 2009 discovery by alleged claimant. Today,

most likely, some issues involved are beyond discoverable due to statutory time lapse and

destruction of exculpatory documentary evidence in my favor. For example, Wells Fargo

(servicer) keeps archived documents such as checks or electronic money transfer statements for

clients for 7 years, after which it destroys them. Therefore, any possible documentary evidence

brought to this court by alleged claimant to rebut my evidence and averments should be treated

as *recent fabrication, forgery of my signature* and fraud created for the purpose of current

litigation. As to witnesses, if they appear by affidavit or in person – they should be treated as

incompetent and/or as perjurers, Robo Witnesses who never witnessed anything in 2005 and

going forward. This is the reason why for more than 10 years numerous attorneys-debt collectors

failed timely collect alleged debt in court. Events below are chronologically sequential.

42.    What if **A** and **B** decided to enter into contract worth of $747,600? **A** was a homebuyer

and **B** was a lender. **A** and **B** never met before and were introduced to each other by individual

intermediaries through phone calls and paperwork.

43.    At the closing of the contract, **A** was present and represented by attorney. **B** was not

present, but was represented by attorney. **A**, relying on his attorney's assurance that he checked

correctness of paperwork, signed contract, which **A** never saw or read before, not to mention

inability to understand it in 2005.

**Shell game ## 1 and 2: A never met B, but here comes C**

44.    Shortly after signing contract **B**, in letter to **A**, designated **C** as its agent and directed **A** to

pay **B** through **C**. What if 3 years later, **A** already paid off **C** about $150,000.00 and invested

about $600,000 to upkeep, renovate and develop his property as business. What if then **C**

intentionally rejected continuing payments from **A**'s "bill pay online service" and deleted **A**'s

account with **C**. After rejected payments, **A** was puzzled and called agent **C** asking for contact

information of **B** to get firsthand information of what is going on and to complain to **B** as

principal about misconduct of **C** as agent. What if **C** refused to give contact information of **B** and

told **A** that **B** does not want to talk to **A**, but **B** will see **A** in court. At this point, **A** lost trust in **C**

and started questioning misconduct of **C** preventing **A**'s direct communication with **B**. Why

would **B** or **C** reject payments from **A** – it made no sense thought **A**, correct? Exactly, good

question! **A** started searching for **B**'s contact information to confront **B** directly and complain on

**C**. What if it turns out years later that rejecting payments from **A** made a perfect sense for **C**

because **B** was gone long before that time and C became in total control of fraud and conspiracy

to defraud against A!?

**Shell game ## 3, 4 and 5: Here comes D, E and F. D never met A before, but D comes to sue A per complaint. However, A meets only E in court instead of D and F.**

45.     What if meanwhile **D,** who never appeared in court personally, by affidavit or by

verification, using attorneys as agents **E,** started foreclosure of **A**'s property where attorneys **E**

filed lis pendens and complaint claiming that they are agents of **D** and that **D** is agent and trustee

of **F** trust, while beneficiaries of this trust (no kidding) are paper certificates. Where is agency

between **B** and **F** including chain of title? Why should anybody novate **A**'s contract without

notice to **A** and his consent – contrary to contract between **A** and **B**? I know, head starts to spin.

Sounds crazy is it not? Exactly, good question!

**A human trafficked to defend his property rights from B, C, D, E and F in court**

46.     Needless to say, **A** harassed and intimidated by **E** forced into defending from **B, C, D, E**

and **F** while demanding contact information of **B** in court to complain on **C, D, E and F** to **B**.

        What if **D**'s attorneys **E** refused to give **A** contact information of **B, D and F**. At this

point, **A** called such actions, among other things, breach of contract by **B** and **C** with principal's

and agent's joint and several liabilities to **A** for interfering with **A**'s business.

**Shell games ## 6 – 9: here comes D2, D3, E2, E3, F2 and F3 – all agents and/or trustees of B**

47.     What if for more than 10 years of litigation, numerous attorneys **E**s of **D**s in contempt of

law, in several courts refused to provide authority and contact information of **B, D and F**.

48.     Why would **B** or **F** do nothing for so long and would not fire agents **C** and **D**s for their

several years of failure to perform and start direct action without agents? Why pay agents for

doing nothing? Exactly, good question! After all, **B** or **F** neither getting **A**'s payments from **C**

nor **A**'s house. Would **B** or **F** at least do something about this situation and contact **A** directly?

Exactly, good question!

49.    Accordingly, after all these years of harassment by **Es**, **A** made an inference that **B** or **F** would not call or write **A**, or appear in court. As such, **A** concluded that neither **B** nor **F** has a claim against **A** and doctrine of latches applies regardless.

50.    Continue logical thinking, **A** concluded that **B**'s or **F**'s claim against **A** is 1) paid off by a third party such as government and/or insurance company using **A** as insured against default and **B** or **F** is happy or 2) **A**'s debt was discharged in full or in part by some other third party's scheme undisclosed to **A** using **A**'s money, or 3) **B** and/or **F** do not exist, and therefore **E** cannot bring either one to court; or 4) **B** or **F** lost count and forgot about **A**'s debt, thereby not looking for **A**. What is left for **A, C** and **E** to do in this situation? Exactly, good question! The answer is to live **A** alone.

**Shell games ## 9, 10, etc.: C, Ds, Es know that B or Fs is not looking for A, but silent**

51.    When **A** caught **D, E** and **F** lying in court about **B**, they left the court. Three years later, **C** sent a new **D1, E1** and **F1** in court with new lies about A and **B**.

52.    What if **C** and **D**, in writing, admitted in court and to **A** that they are not lenders and have no vested interest in **A**'s property? What if **C** knew the reason why **B** is not looking for A, but fail and refused to tell it to court and **A**? Is it fraud? Exactly, good question!

53.    What if **C, Ds** and **Es** within 10 years knowingly interfered with **A**'s business causing damages? What if they wanted to embezzle **A**'s house by false pretenses claiming agency from B or **F** knowing that there is no agency or trust relationship? Regardless of all above, years later **B**, claiming to be the Lender on the contract, turned out to be just a money broker, fraudster and "fly by night" operation that shortly after contract with **A** went out of business. Is it fraud to tell the court that **B** is existing lender who appointed **C** as his agent to collect monthly payments or conduct foreclosure? Exactly, good question!'

54.    What if **A** obtained documentary evidence suggesting that alleged debt was either paid off to **B** or **F**; or that **B** or **F** never existed or stopped to exist? What if one of these possibilities was the case here, should **A** give his property to **C, Ds** and **Es** to keep it for themselves as free house because they are not only interlopers with no vested interest in the outcome of litigation, but also criminals that must be jailed?

55.    In any event, while **Es** were running all these Shell games, 6 years statute of limitation to collect the alleged debt by **B** or **F** has run and the remedy for **F** is only liability action against **Ds** and **Es**, if **F** even exists.

56.    According to Homestead Acts, **A** says that this property is not free house granted by **C, Ds** and **Es** for him to keep, but rather **A** earned it and **A** is the lawful owner to possess it because fraud unravels all. In addition, **A** is entitled to disgorgements of money paid to **C** who never paid it to B, economic and punitive damages from **C, Ds, Es** and **Fs**.

**Logical thinking and application of law of equity**

57.    In this demonstration, allegorically speaking, the valet is the house. What if one day **A** while walking the street notices a valet in a puddle with mud? **A** bends over and picks up this valet. **A** starts cleaning valet from mud (labor, $600,000.00 performance). What if **B** while walking on the opposite side of the street noticed what **A** was doing. **B** chases **A** and says, "Hey that's my valet, give it to me." What if **A** says to **B**, "Fine, I will give it to you, but tell me how much money is there or empty your pockets and show me that you have no other valet?"

**Shell game Court proceedings: here come attorneys C and Judge Dear**

58.    What if **B** says to **A**, "That is none of your business, just give the valet to me." **A** says to **B**, "In that case I will keep the valet because I think you're lying to me that you are the owner of it." What if **B** says to **A**, "In that case I will call my bodies and they will beat you up until you

give up the valet." What if **B**'s bodies are attorneys **C** and **Judge Dear**, and beating is going on

in court while **Judge Dear** is participating in beating **A**? According to proverb – finders keepers

– should **A** give valet to **B** even though **B** refuses to prove that he is an owner of the valet? The

answer is NO.

59.     In these demonstrations **A** is Michael Krichevsky, **B** is money broker or "originator," **C** is

alleged Wells Fargo servicer, **Ds** are numerous U.S. Banks as trustee, **Es** are numerous

foreclosure mills and **F** are several Banc of America Funding Corporations as trust for certifies.

All of these business entities are sophisticated in real estate, finance laws and employing

countless attorneys who know what scam they are running..

**Going back to reality of this action and scheme to defraud**

60.     The reason that FRENKEL LAMBERT WEISS WEISMAN GORDON, LLP backed off

in 2015 from trial is since 2009, I demanded, but was not given a chance, to depose alleged

creditor. Opposing attorneys knew that they have no live body from alleged creditor to produce

for deposition or examination at trial and I would expose their crime.

**My logical thinking and application of law and equity to real facts of this action**

61.     From PRACTICAL TREATISE ON THE LAW OF TRUSTS AND TRUSTEES BY

THOMAS LEWIN, ESQ., (1837) (downloaded in PDF from Google Books) – an all times

classic on these subjects, I learned the following and I quote:

> "Thus, in the words of an old counsellor, the parents of the **trust** were **Fraud** and
> **Fear**, and a court of conscience was the **Nurse**, – *Attorney General v. Sands*,
> Hard. 491."
> "With respect to the feoffee to uses, it was held to be absolutely indispensable that
> there should be *confidence in the person*, and privity of estate. **For want of the**
> **requisite of personal confidence** it was ruled that a corporation could not stand
> seised to a use ; **for how, it was said, could a corporation be capable of**
> **confidence when it had not a soul? Nor was it competent for the king to**
> **sustain the character of trustee; for it was thought inconsistent with his high**
> **prerogative that he should be made responsible to his own subject for the due**

**administration of the estate.** And originally the **subpoena lay against the trustee himself only**, and could not have been sued against either his heir or **assign**; for the **confidence was declared to be personal**, and not to accompany the devolution of the property." [emphasis mine]

62.    To demonstrate this point, in this case, I think of the Office of the United States Trustee and the Office of Bankruptcy Trustees that are both corporations or trusts, which employ alive people *capable of confidence* with physical bodies, brains and souls.

### If there is office of trustee – there has to be a registered, named trust – 2 different, distinguished from each other concepts and entities

63.    The name (recall party **D** above) of alleged creditor on caption in this case is "U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, series 2006-F." Accordingly, I infer that alleged creditor is not "US Bank, NA as trustee" with no soul or brain is a corporate employer of the natural, alive individual who is trustee. The name (recall party **F** above) Banc of America Funding Corporation Mortgage Pass-Through Certificates, series 2006-F is an "implied" in caption of POC, gibberish name of REMIC trust, a custodian or warehouse with no soul or brain, which should be named as creditor. Presumably, Banc of America Funding Corporation is an employer of the other natural individual who is a warehouse trustee, a clerk. However, these individuals both are missing in actions since, at least, from 2006. You know those who do the book keeping for the trust (estate). Those that now work from home due to COVID-19. They pick up the phone, make income tax to be paid to IRS, open mail and control the estate. One of them writes a check to US Bank, NA as trustee for the work, the other deposits it into a bank account of USB. Those individuals presumably with authority hired and appointed USB, who in turn hired attorneys to do this foreclosure. Those individuals who presumably are capable and vested with confidence from

2006 – presumed date of securitization and creation of alleged trust, sit at different locations in different states.

64.     Since 2009, I was trying to find one live individual from the USB or REMIC trust to discuss this foreclosure situation and verify that USB is the right party to talk with, or to serve with *personal* subpoena in my case. However, I was always blocked by foreclosure attorneys zealously guarding individuals' name, position, authority, business phone number or business address. That information would verify that such individual exists, and therefore trust (estate) also exists. If I suppose that USB was the trustee than what was the "registered" name of the trust, in which state was it registered and what its employer ID number from IRS? Finally, after several years of investigation and especially *surveillance*, I concluded that this individual who works for the trust is a ghost. But, can a ghost pick up a phone and talk to me? Can a ghost deal with IRS on behalf of the trust, be subpoenaed and deposed in discovery? Exactly! Good questions!

65.     The whole foundation of this POC based on the fraudulent transfer transaction made in 2009 by an alleged creditor. It is possible that another fraudulent transaction made in 2005. From 2009 foreclosure lawsuit against me until today, this is what essentially was/is the *real agenda* of alleged creditor(s) or USB(s), and its alleged numerous attorneys-interlopers and law firms demonstrated by this brief hypothetical dialog below. This dialog in essence went always like this:

> **USB and its attorneys from 2009 until 2020**: we are mad at you (Krichevsky) and want to foreclose.
> **I (Krichevsky)**: I have never dealt with you. Please, explain who you are and why you are mad at me. Let us sit down and work it out.
> **USB and its attorneys**: we refuse to explain who we are, why we are mad at you or work out anything with you. We just want to be mad at you and foreclose."

66.    That went against doctrines of Good Faith, Unclean Hands, Fraud and Deceit in my

affirmative defenses and counterclaims playbook.

67.    Below, I list historical, chronological facts as material, relevant to objection of proof of

claim ("POC") and to motion for relief from stay as brief as I can be.

### HISTORY AND AFFIDAVIT OF NON-RESPONSE

**Future proves past – no attorney firm or a alleged servicer involved in foreclosure since
2009 had any authority to foreclose including creation and signing assignments of
mortgage**

68.    These facts strike in the core of alleged creditor's identity, credibility of attorney's

Affirmations, Affidavits and Validity of Evidence of purported US Bank, as trustee ("USB") and

of its alleged Servicer Wells Fargo Bank, NA, which I would call "WF." These facts show what

WF knew and when they knew that debt paid off.

69.    All attorneys involved including from WOODS, *knew or had reason* to know maxims of

law about the name I quoted above, because I quoted these maxims to them in my paperwork and

entered into the state's court record.

70.    All attorneys involved including from WOODS, knew that they have to keep Condor to

the court.

71.    WOODS and others *knowingly* and *deliberately compartmentalized* foreclosure process

to aid in attorney's contrived ignorance of the crimes committed by making them unlawfully act

like robots on assembly conveyer. This is why they called foreclosure mills.

72.    Let's start with maxim **"A name is not sufficient if a thing or subject for it does not

exist by law or by fact."**

**If there is no entity called trust – there is no trustee**

73.    The first thing an attorney is doing when signing up a new client is taking a copy of

driver's license or passport. In 2009 I asked verbally and on the paper USB's attorneys to

produce from their office any copy of trust document showing the address and place of

registration of USB.

**Refusal to comply with CPLR §322(a) to disclose identity of plaintiff is contempt of court,
violation of due process and circumstantial evidence of lack of POA and therefore lack of
authority from client to start foreclosure action**

74.    They ignored my paperwork by becoming silent, which is evidence of *contrived*

*ignorance* of the crimes committed because they *purposely* failed to acknowledge on the record

that I asked to identify their client and raised the issue. If they addressed or acknowledged this

issue on the record in any way – even by refusing to produce, they would have lost contrived

Ignorance of the crimes committed on the record. They would have admitted to guilty knowledge

(no plausible deniability) of their client's nonexistence.

75.    I will address their *knowledge of fake name* in detail below. But, for now to avoid

redundancy and repetition I will continue to call this current gibberish, alleged creditor by the

name "USB19" or "creditor" to reflect the year 2019 of the latest, fourth foreclosure round in

this court. The first round started in state court in 2009. But, why alleged creditor and its

attorneys could not foreclose in the first round or in the second at least? Exactly! Good question!

I will keep writing to show the answer why.

76.    However, in 2009 foreclosure case there was differently named USB, which I would call

it "USB9" to avoid confusion and reflect the year of 2009 and so on. What I know now, I did not

know then and it took me almost 10 years of "diving into different rabbit holes" created by

attorneys to figure it all out. At all relevant times below, I essentially wrote to each named USBs, their attorneys and judges the following:

**Round 1: 2009 – 2013 Supreme Court Index No foreclosure lawsuit, fraud and deceit**

77.      Unidentified, alleged Plaintiff's name was exactly styled "U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS - THROUGH CERTIFICATES, SERIES 2006F" (USB9), copy of the complaint attached as **Exhibit B**. It is self-evident that names of USB19 (above) and of USB9 are different, which according to law and logic identifies two different corporations or other entities.

**2009 complaint was unauthorized practice of law and unauthorized filing because nobody appointed the firm to do foreclosure**

78.      On the court's caption there was address listed for USB9 as 3476 Stateview Boulevard, **Fort Mill, SC** 29715. However, the body of complaint contradicted the caption and stated:

> "FIRST: Plaintiff is a national banking association duly organized and existing
> under and by virtue of the laws of the United States of America and having its
> principal place of business in **Cincinnati, OH**, and the owner and holder of a note
> and mortgage being foreclosed."

**Judicial estoppels and Judicial notice # 1: USB9 pleads that it is the owner and holder of a note and mortgage from Ohio – not from South Carolina as caption states.**

79.      Accordingly, these statements contradicted each other and at least one, made by officer of the court, was false, misleading the court and I because in the body of the complaint, attorney did not plead, "Plaintiff is a trustee" for the "MORTGAGE PASS - THROUGH CERTIFICATES, SERIES 2006F" trust. Only caption implied securitization. Stated differently, if Plaintiff is "the owner and holder of a note and mortgage" then implied trust does not exist. Trust cannot be just an empty bag. But, if there is a trust then Plaintiff, as trustee, cannot be "owner and holder of a note and mortgage" because they are both property of the trust's beneficiaries. Trust and trustee are 2 different entities and both cannot own the same thing.

80.     I googled USB9 name and address in order to obtain its phone number. However, only WF name, address and phone number came up. I called the number that came up and asked if anyone can point me to USB9 in that building. I was told that only WF is located under this address. That was my clue that something is wrong – why would attorney make an effort to place that address on the caption of the complaint? **It must be important to him**, but why? The answer is, pleading attorney misleads the court by impliedly inserting that Plaintiff is trustee for the trust on the caption. However, in the body of pleading where all factual, material statements belong attorney doesn't say that and signs complaint under the penalty of perjury. This is how contrived ignorance of the crimes committed done. Attorney knows that Plaintiff is not a trustee as implied on the caption, but in the body (text) of the complaint attorney actually did not lie about trustee and trust.

81.     USB9 purportedly was represented by infamous foreclosure mill Steven J. Baum, P.C.

82.     In 2010, New York State Attorney General and United States Attorney investigated them for their fraudulent robo-signing practices and fabricating assignments, affidavits containing false information, and fraud upon the court.

83.     As result of the investigation, Steven J. Baum, P.C. settled, paid fines and disbanded per settlement with them.

84.     One source of information from NY attorney, Susan Shana Lask, I used and relied upon to investigate numerous wrongdoings by Steven J. Baum, P.C. Upon information and belief, employees of Steven J. Baum, P.C. were hired by other foreclosure mills in the Rochester, New York area. As it turns out, Rochester New York area is the hub for foreclosure mills in New York. This fact will be relevant for me to show pattern and practice of contrived ignorance of the crimes committed by WOODS.

85.    New York City register show the following information regarding purported assignment

of mortgage in 2009:

> ASSIGNOR/OLD LENDER:
> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
> 3300 SW 34TH AVENUE, SUITE 101.
> OCALA, FL 34474
>
> ASSIGNEE/NEW LENDER:
> US BANK NATIONAL ASSOCIATION
> 180 EAST 5TH STREET
> ST. PAUL, MN 55101

86.    Upon information and belief, my case was on a class member list, which law enforcement

reviewed since Steven J. Baum, P.C. abandoned foreclosure against me in 2010. Particularly, in

numerous cases that Steven J. Baum, P.C. handled and in my case, at that time, undisclosed

employee from said firm permitted and rented her name to unidentified people who were

fabricating, inter alia, notarized assignments and used said employee name to sign those

assignments. Investigation revealed that said employee, Elpiniki M. Bechakas Esq., turn out to

secretly be the attorney of Steven J. Baum, P.C. and Pillar Processing LLC while falsely

claiming that she is Assistant Secretary and Vice President" of MERS. Interestingly, I couldn't

find any document from Steven J. Baum, P.C. where she signed anything as attorney. However,

she created countless fraudulent assignments including assignment of my mortgage, **Exhibit C.**

Additionally, this Exhibit conveniently contains a copy of ASSIGNMENT FROM MERS

CHECKLIST. This checklist shows that this purported assignment of my mortgage was not in

compliance with MERSCORP, did not have any identifiable MIN number, and therefore

suggests that it was not registered and made using its database and software program – outright

criminal fabrication of securities. Yet, another evidence of fabrication of my purported

assignment is conveniently attached to **Exhibit C** and shows the MIN Status of my Note as

"inactive."

### First Refusal to comply with CPLR §322(a) to disclose identity of plaintiff is contempt of court, violation of due process and circumstantial evidence of lack of POA from USB9 and therefore lack of authority from USB9 to start foreclosure action

87.    Foreclosing party as plaintiff has the burden of proof. I rebutted presumptions of validity

of plaintiff's name and its averments in complaint. I demanded identity of plaintiff, USB9. I

wrote in ¶ 4 of my motion to dismiss and for sanctions:

> "4. The Plaintiffs complaint is so vague and ambiguous that I can not reasonably
> be required to prepare a responsive pleadings because the complaint fails to attach
> any document to identify who or what "US BANK NATIONAL ASSOCIATION,
> AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
> 2006-F" is; nor can I determine from the Plaintiffs complaint upon what facts the
> Plaintiff is claiming to be the real party in interest with legal capacity to pursue
> this foreclosure action on a promissory note which is required by the New York
> State Law. Plaintiff in Complaint (Exhibit B) does not affirmatively state when it
> became the owner of mortgage and note. Nor plaintiff affirmatively states that it is
> the owner and holder of the mortgage and note. Plaintiff does not state whom I
> delivered the mortgage and note and who assigned my instruments to them. No
> assignment, mortgage or note attached to the complaint either."

88.    This, in turn, shifted burden of proof on USB9 and its attorneys to come with admissible

evidence per CPLR §322 (a). They intentionally failed to meet the burden by acting

professionally incompetent and used contrived ignorance of my demands during court hearings

and in my affidavit supporting my motion to dismiss and for sanctions, **Exhibit D.**

89.    Accordingly, I inferred that Steven J. Baum, P.C. did not have POA from USB9, and

therefore foreclosure complaint is unauthorized filing.

### Evidence shows that Steven J. Baum, P.C. acted on their own behalf as interloper and trespasser from criminal enterprise and was not real party in interest

90.    In that round of litigation, when I asked Steven J. Baum, P.C. to clarify and identify

whom or what USB9 is and why it suing me, attorneys admitted by contrived ignorance of the

crimes committed by silence and nonproduction. Accordingly, Steven J. Baum, P.C *knowingly* violated CPLR §322 (a) that states: Authority for appearance of attorney in real property action:

> "a) Authority of plaintiff's attorney.   Where the defendant in an action affecting real property has not been served with evidence of the authority of the plaintiff's attorney to begin the action, he may move at any time before answering for an order directing the production of such evidence.   Any writing by the plaintiff or his agent requesting the attorney to begin the action or ratifying his conduct of the action on behalf of the plaintiff is prima facie evidence of the attorney's authority."

91.    Steven J. Baum, P.C. did not voluntarily serve me with "Any writing by the plaintiff or his agent requesting the attorney to begin the action or ratifying his conduct of the action on behalf of the plaintiff (purportedly USB9)..," but to add insult to the injury Steven J. Baum, P.C. refused to provide this evidence.

92.    I learned a lesson from  Michael J. Wrona, Esq. of Steven J. Baum, P.C., who wrote the 2009 complaint against me. Mr. Wrona explained that Plaintiff must verify each foreclosure complaint. When Plaintiff does not reside in the same county where attorney does, attorney does the verification. According to complaint, USB9 located in Ohio and Steven J. Baum, P.C. in New York. This is what  Michael J. Wrona, Esq. wrote in verification for the complaint:

> " That the reason this verification is made by your deponent instead of the Plaintiff is because the Plaintiff does not reside or have an office for the conduct of business within the County of Erie, which is the County where your deponent has his office."

93.    As a result, I have made an inference that Steven J. Baum, P.C. did not have any writings to show "prima facie evidence of the attorney's authority" and I am confident that no evidence to the contrary existed. Therefore, Steven J. Baum, P.C. knew or had reason to know that the firm was estopped and forbidden from continuing foreclosure on their own behalf.

94.    Simultaneously, said law enforcement authorities started investigation of the 5 major banks, including Wells Fargo – alleged servicer. Upon information and belief that investigation

resulted in fines and consent judgments including against Wells Fargo for fraudulent foreclosure practices, which they promised to stop. At that time Steven J. Baum, P.C. abandoned round 1 foreclosure against me as contrived ignorance of the crimes committed was exposed.

95.    In September 2011, WF harassed me by sending some thugs who broke the gate with lock on my property triggering call to 911, after which these thugs apologized and said that they sought the property was abandoned.

96.    Shortly thereafter, WF posted sign on my gate that agent inspected my property and determined that it was vacant. That in turn forced me to write WF a letter with qualified written request "QWR." In it, I asked, besides other things, for a copy of note and mortgage if they have it. In addition, I asked that the reply to this letter be sent to my notary's address so that the notary will witness receipt or absence of the receipt from WF. My notary never received anything from WF. This letter was sent by certified mail return receipt requested and proof is attached as **Exhibit E**. This letter speaks for itself.

**MERS did not give POA to Steven J. Baum, P.C. to assign purported mortgage to USB9**

97.    I discovered that on March 14, 2007, Per New York State Banking Department Bulletin, Fairmont Funding, LTD alleged original lender ("Fairmont") surrendered License to engage in the business of a Mortgage Banker. Attached, as **Exhibit F** is a copy of that Bulletin.

98.    As such, on March 14, 2007, Fairmont ceased to exist and I am confident that no evidence to the contrary existed.

99.    This fact is relevant and material because it is strike toward validity of purported mortgage assignment by MERS purportedly made on August 25, 2009 when in fact MERS ceased to exist as nominee for Fairmont in 2007.

100.    Following the same logical thinking that USB9 did not give POA to Steven J. Baum, P.C.

to conduct foreclosure, I believe that MERS did not give POA to Steven J. Baum, P.C. to create

an assignment of mortgage in 2009 and I am confident that no evidence to the contrary existed.

101.    I believe that MERS was not even aware just like USB9 that Steven J. Baum, P.C.

intended to conduct foreclosure against my property and I am confident that no evidence to the

contrary existed.

### Logical thinking – future proves past

102.    When Fairmont ceased to exist in 2007, its POA nominating MERS in any capacity

ceased to exist in 2007 too. Accordingly, POA of dissolved entity could not survive nomination

of MERS.

103.    Upon information and belief, Fairmont did not have successors either and I am confident

that no evidence to the contrary existed.

104.    Therefore, purported assignment of my mortgage in 2009 was unauthorized, fraudulent

transaction or conveyance made by Steven J. Baum, P.C to conduct fraudulent foreclosure on its

own behalf.

### If the note separated from mortgage, the debt becomes unsecured

105.    Was the note and mortgage separated from each other? I was unable to find out for sure,

but I believe it was. However, purported assignment of mortgage fabricated by Elpiniki M.

Bechakas Esq. from Steven J. Baum, P.C. and Pillar Processing LLC was void for three reasons.

First, because in 2009 MERS lacked authority from defunct, nonexistent Fairmont to act as

nominee and assignor. Second, because the whole transaction was fraudulent transaction

knowingly done by Elpiniki M. Bechakas Esq., employee of Steven J. Baum, P.C. and Pillar

Processing LLC. Third, according to WOODS' admission purported note in 2006 was sold to

securitized trust. However, MERS was not nominee of that trust to assign mortgage to it as well and I am confident that no evidence to the contrary existed. So, the note and mortgage were separated.

106.    In addition, upon information and belief, Elpiniki M. Bechakas Esq. was neither employed by MERS, nor was its agent, and therefore lacked authority from MERS to create any assignments and I am confident that no evidence to the contrary existed.

107.    Furthermore, assignment from MERS checklist evidences its internal procedures and quality control. Upon information and belief, this checklist form is for authorized by MERS individuals only who permitted to create assignments of mortgage using MERS computer program. The checklist states that if individual does not comply with MERS requirements, assignment would not be valid and approved. Apparently, this checklist demonstrates that one has to have a password and user ID to create and assignment, which will have some MERS attributes on it. The form titled "Assessment of compliance with the MERS system requirements."

108.    The ¶ 1 of the form says, "The assignment contains a MIN (or the location for the MIN is equivalent). Accordingly, if MIN number is present on the assignment it is compliant with MERS requirements. Upon information and belief, this MIN number is some kind of registration number for the note and mortgage tracked by MERS just like every bank's check has its number, account number and routing number on it. Even if one of those numbers is missing, the check will be considered a forgery.

109.    In addition, this form says that if the assignment of mortgage is prepared for New York, it has to have the following address of MERS on assignment:

"1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026."

110.    In sssignment created by Elpiniki M. Bechakas Esq. there is no MIN number and the

address of MERS is different form above, which is:

"3300 SW 34th Ave. Suite 101, Ocala, FL 34474"

111.    Accordingly, I concluded that said assignment is *counterfeit*, did not come out of MERS

system, and therefore void.

112.    As such, discovery from IRS was necessary to see if she filed 2009 W-2 or 1099 from

MERS to confirm or reject my information and belief. Today, this information is irrelevant as

untimely although it could be used to prove my damages against WOODS and others.

113.    From 2010 until 2013, USB9 and Steven J. Baum, P.C. were silent and Administrative

Judge Lawrence Knipel dismissed the action for failure to prosecute and vacated lis pendens.

114.    According to doctrine of judicial estoppels, USB9 had 4 years to produce promissory

note and mortgage, but failed to do so thereby triggering inference that neither USB9 and Steven

J. Baum, P.C., nor WF were in possession of the note and mortgage or knew of its whereabouts.

Accordingly, USB9 was estopped by action of silence and nonproduction to come later with any

note and mortgage and start foreclosure.

115.    Exactly, where were USB9, its alleged attorneys and servicer WF in regards to 2009

foreclosure production of evidence including violation of CPRL 322(a)? Good question! Because

of this I concluded and I aver that USB9 1) had no idea about 2) 2009 foreclosure by Steven J.

Baum, P.C., 3) did not authorize any 4) assignments of mortgage or 5) note and I am confident

that no evidence to the contrary existed.

116.    I believe that no securitized trust gave Steven J. Baum, P.C. even a copy from real note

and mortgage and I am confident that no evidence to the contrary existed.

117.    Logically thinking, I believe that purported note and mortgage did not come from

securitized trust, but were fabricated along with my forged signatures at Docprobe LLC where Steven Rimmer is Vice President.

118.    Alternatively, If USB9 was holder of the real note and mortgage then its remedy for losing 2009 foreclosure would have been a legal malpractice claim against Elpiniki M. Bechakas Esq. and Steven J. Baum, P.C., in which case I should be left alone because USB9 was compensated from and by malpractice insurance carrier. As such, discovery is necessary.

119.    Since Steven J. Baum, P.C. used unauthorized assignment of mortgage, used "sewer service" to obtain default, in contempt of court violated CPLR §322 (a) and filed unauthorized complaint, I concluded at that time, that Steven J. Baum, P.C. was trying to foreclose on me "of the book" so to speak. I concluded that if they had succeeded, the money from the sold property would be divided between all involved criminals "under the table" so to speak.

**Round 2: 2014 – 2015 foreclosure litigation – continuing attorney's fraud and deceit**

120.    In January 2014, yet another alleged Plaintiff, USB, with yet another name, allegedly hired Frenkel, Lambert, Weiss, Weisman & Gordon, LLP ("Frenkel") to restore foreclosure action to calendar and for order of reference. I will call this Plaintiff "USB14." Supporting affirmation, attached as **Exhibit G**, now states different facts from facts of USB9 in 2009 foreclosure complaint and wants to change plaintiff's name contrary to doctrine of judicial estoppels.

121.    According to affidavit of merit filed in court, **Exhibit H**, WF accelerated mortgage note on May1, 2009.

122.    This fact will become material and relevant to round 3 foreclosure.

**Judicial Estoppels and Judicial notice #2: date of acceleration of mortgage note is May1, 2009 by WF.**

123.    Once again, still undisclosed interloper and meddler who learned a lesson from prior lost

action, forced me to defend my property and me against new false accusations by filing cross-motion to dismiss foreclosure action, **Exhibit I**. Once again, I rebutted identity of USB14, all Frenkel's sworn statements, newly fabricated exhibits and so-called 'corrective assignment of mortgage.'

124.    All attorneys from Frenkel knew that by operation of law, they must file counter-affidavit or my affidavit stands as facts and truth defeating motion filed by them. Again, according to doctrine of judicial estoppels, I rebutted presumptions of validity of each document. This, in turn, shifted burden of proof on USB14 and its new attorneys to come with admissible evidence. They intentionally failed to meet the burden using contrived ignorance of duty to disclose identity of the client. As such, I made a negative inference that Frenkel did not have POA from USB14.

**It was suspicious to me that after 5 years of nonproduction of the note and mortgage – all of a sudden trustee found them in CERTIFICATES**

125.    I discovered that *Steven Rimmer* who purportedly signed and dated endorsement as Fairmont's Vice President on purported note, in 2012 joined Docprobe LLC as Vice President. Company provides collection and storage of Post Closing Trailing Documents in Real Estate Transactions. I believe that purported mortgage and note in this round came from that company because it is capable of fabrication akin to infamous LPS and DOCX, and I am confident that no evidence to the contrary existed.

126.    This new USB14 came up with CORRECTIVE ASSIGNMENT made in 2013 purportedly correcting Scrivener's Error. However, because first assignment was void as fraudulent transaction, second assignment could not correct first fraudulent transaction made in 2009. Why not to make a new assignment since first was void? Exactly! Good question!

127.    Upon information and belief, the unknown to me interloper could not find anyone with authority to lawfully make new assignment of mortgage. Therefore, interloper(s) using contrived

ignorance of void first assignment of mortgage decided to "correct Scrivener's Error" and present

"repackaged" void assignment to court.

128.    In that round of foreclosure, I demanded to see an original note, which attorneys claimed

was in their possession. One of the attorneys of the firm appeared in open court and presented to

me alleged original note. After examination of the note, I found that it was redacted using

"Whiteout" and that the paper was freshly white after all these years. I also found undated

stamps? made to order of Wells Fargo bank.

### Second Refusal to comply with CPLR §322(a) to disclose identity of plaintiff is contempt of court, violation of due process and circumstantial evidence of lack of POA and therefore lack of authority from USB14 to start foreclosure action

129.    Thereafter, I filed amended cross-motion to dismiss where I added my newly discovered

facts and the new main argument written below:

> "Upon the court's and my examination of the purported note produced by alleged
> owner, original owner sold its purported claim and note "without recourse" to, in
> my belief, undisclosed debt buyer for pennies on the dollar. "Without recourse"
> indicates to the court and debt buyer that no claim can later be made against the
> original owner (purported holder of the authenticated note and mortgage) as to
> authenticity and/or legality of the claim and note. In addition, I discovered
> together with the court, note contain an area, which was "white out" thereby
> hiding other endorsement, which would be a notice and reason why it was sold
> "Without recourse" to the buyer. As the saying goes, "buyers beware."
> "I move this Honorable court to take mandatory judicial notice that this note is
> redacted ("white out"), or used before, and therefore altered and void just like any
> bank check would be."
> "Alternatively, upon circumstantial evidence and logic, I believe that undisclosed
> debt buyer purchased an evidence of debt, or fabricated it, and is proceeding with
> collection activity posturing as original Plaintiff with the ownership of original
> note. Accordingly, I rebutted presumption of document's authenticity and legality
> of the claim against me and demand proof from Plaintiff."

130.    It was the second time when opposing attorneys violated CPLR §322(a), did not rebut

above quoted averments and went silent using contrived ignorance of duty to disclose identity of

the client. To pierce it, in my cross-motion to dismiss I wrote:

"NOTICE TO FRENKEL LUMBERT WEISS WEISMAN & GORDON, LLP
AND ALL ATTORNEYS
12. As *pet Amalfitano v. Rosenberg*, 12 NY 3d 8 - NY Court of Appeals (2009)
you are in violation of Judiciary Law § 487.
The court stated:
"The purpose of the statute is to "enforce an attorney's special obligation to
protect the integrity of the courts and foster their truth-seeking function."
"A violation of Judiciary Law § 487 may be established " either by the defendant's
alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by
the defendant"

131.    In my cross-motion to dismiss, I also requested trial by jury in order to dismiss this action

with prejudice. In reply, USB14 and its attorneys filed cross-motion to discontinue action and

during scheduled conference pleaded that I do not oppose that motion. There, attorney from

Frenkel essentially begged me to let them save their face and that I they (USB14) will never

bother me again. I had alternative option to act by going on trial and dismissing action with

prejudice. I relied on this promise and did not oppose that motion. It was granted on January 6,

2016 by Hon. Bert Bunyan, **Exhibit J**.

132.    **Judicial Estoppels and Judicial Notice #3**: on May1, 2015, 6 years statute of limitation

expired and after that, 2016 foreclosure action by WOODS became harassment and frivolous

action.

133.    Additionally, in my quest to meet the rightful owner of the note and settle controversy

with my counterclaims, on or about March of 2015, I sent rescission letter to WF. By operation

of law, WF had 20 day to challenge my rescission. They only sent me a reply letter, **Exhibit K,**

and thereafter defaulted.

134.    Because of that, I realized that this foreclosure is unconscionable since attorneys involved

refused to correct their false statements, mistakes or errors on the record. It would be unjust in

the court of equity to allow some interloper who made false representations in court to retain the

fruits of my life's labor.

**Round 3: 2016 – 2019 foreclosure lawsuit – Supreme Court Index No continuing fraud, deceit, violation of FDCPA and RICO.**

135.    According to common law, WOODS committed barratry, a crime of instigating

controversy and profiting from it while Federal law, inter alia, calls it RICO.

136.    Attorneys Aleksandra K. Fugate and Brittany J. Maxon appeared in this court, they both

knew that 6 years statutes of limitation to collect on a debt run in 2015.

137.    In *Marrero v. Crystal Nails*, 114 AD 3d 101 - NY: Appellate Div., 2nd Dept. (2013) the

court held:

> "CPLR 205 (a) provides that when an action is dismissed on grounds other than
> **voluntary discontinuance**, lack of personal jurisdiction, **neglect to prosecute**, or
> a final judgment on the merits, the plaintiff may bring a new action within six
> months of the dismissal, even though the action would otherwise be barred by the
> statute of limitations"

138.    Round 2 action was dismissed for neglect to prosecute and for voluntary discontinuance.

139.    Upon information and belief, Frenkel filed motion to discontinue because they knew that

MIN number of alleged note and mortgage had status "Inactive," and therefore were afraid to go

on trial on the round 2 of foreclosure.

140.    Unified Court System's rules published on its website in section Affidavit in Support of

motion says the following:

> "The Affidavit should say:
> what is being asked for and why
> the facts about the case
> **whether or not the movant has ever asked the court for this before, and if so,
> what happened and why the movant is asking again."** [Emphasis mine]

141.    In this case, movant was USB16. Because it is legal fiction, some employee with

authority and competence to verify complaint must sign verification in order for the complaint to

be valid.

142.    Upon my personal investigation of foreclosure mills, no bank's employee ever verified

complaint, which is also the case in all 3 Rounds of foreclosure.

143.    I wrote:

"Alleged Plaintiff's motion for order of reference, which is second after 2013, too
does not have movant's affidavit in support from USB16.
"Current Plaintiff's attorney, Victoria E. Munian. Esq., writes in the certificate of
merit:
"1.I am an attorney at law duly licensed to practice in the State of New York, and
am affiliated with the law firm of Woods Oviatt Gilman LLP, attorney for
plaintiff U.S. Bank National Association, as Trustee for Banc of America Funding
Corporation Mortgage Pass-Through Certificates, Series 2006-F in this action."

She further writes: "On April 6. 2016 I consulted about the facts of this case with
the following representatives of plaintiff: Daniel V. Edward. Vice President of
Loan Documentation."
Prior to producing my answer with counterclaim, in good faith, I called Victoria
E. Munian. Esq. at her office and attempted to inform her about the history of
prior fraudulent litigation, its outcome and about other issues I raised herein. After
a few minutes into our conversation, she abruptly ended it after I started talking
about plaintiff's identity.
On March 1, 2017, I called WOODS OVIATT GILMAN, LLP. and asked
receptionist for information about US Bank. No one could find any information
such as name, mailing address or telephone number of Plaintiff in firm's computer
system.
Another staff member directed me to call Wells Fargo at 800-416-1472. No one at
this number was able to help me and worker there directed me to call Wells Fargo
at 866-234-8271. No one at that number would identify Plaintiff and give me any
contact information.
Based on the foregoing, I aver that U.S. BANK NATIONAL ASSOCIATION.
AS TRUSTEE FOR BANC OF AMERICA FUNDING CORPORATION
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006F does not
exist, and therefore demand its articles of organization or formation together with
information from the federal territory or state under which it registered.

144.    Thereafter I wrote:

"NOTICE: Victoria Munian, Esq. you must rebut this affidavit point for point
and/or should contact your licensed attorney for advice on how to report this case
to your professional liability insurance carrier"

145.    Once again, WOODS brazenly refused to provide evidence of authority from USB16 in

violation of CPLR §322(a). At this point, I pierced contrived, willful ignorance of crimes

committed by attorney Munian and demonstrated on the record that she committed perjury

because she failed to rebut my affidavit point for point. Now, she was/is judicially estopped to change her testimony.

146.    Upon information and belief, Victoria Munian, Esq. after above notice to her, quit working at WOODS and moved to Georgia to save her attorney license.

147.    Fact, I have not seen any and therefore aver that there is no documentary evidence in this case that shows existence of any employee from US BANK as trustee.

148.    This makes its motion defective and nullity. Alleged Plaintiff's attorneys deceitfully use so-called 'witness affidavit' from alleged servicer, Wells Fargo, to cover up this defect.

149.    WOODS OVIATT GILMAN, LLP does it on purpose to avoid identifying interloper who hired them. As attorneys' from said firm allegedly awarded status of Super Lawyers, they definitely know that attorney's affirmation is an opinion or argument before the court and must rely on facts averred by their client, USB16. As such, I objected to this defective motion and demanded sworn supporting affidavit from qualifying employee of US BANK. Without this affidavit, I cannot be compelled to argue fraud with fiction as fiction is dead and I cannot impeach it in front of jury. I can cross-examine attorneys from WOODS OVIATT GILMAN, LLP who are deceitfully attempting to act as fact witnesses in violation of "advocate – witness" rule of New York Rules of Professional Conduct, but that would still create a Theater of Absurdity since I know already their perjurious, hearsay answers.

150.    In addition to this obvious fraud upon the court by officers of the court from WOODS OVIATT GILMAN, LLP, no attorney from the firm or employee from alleged servicer has any firsthand knowledge as to what allegedly happened in 2005 and thereafter.

151.    In addition, none of the people involved dares to say that in 2005 and/or thereafter they were custodians of the documents they allegedly reviewed. I bet that most of them if not all did

not even work as attorneys or servicer's employees from 2005. As such, any certification from

attorney's office, affirmation or affidavit under penalty of perjury, or exhibit they are pushing

into the court's record is inadmissible hearsay, and even worse – fabrication from Wells Fargo

given to them. Given the fact that attorneys from WOODS continued acting as criminals, I had

no choice but to file for bankruptcy.

CONCLUSION OF STATE LITIGATION

152.    All attorneys involved in state litigation in concert failed and refused to rebut my

averments. They failed to produce admissible evidence and refused to identify alleged creditor

thereby committed attorney's misconduct and violated New York §487 of Judiciary law.

**Bankruptcy court litigation**

153.    On June 6, 2019, chapter 13 petition was filed on my behalf in this court.

154.    On or about August 15, 2019, U.S. Bank National Association, as Trustee for Banc of

America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F (" US Bank")

represented by WOODS OVIATT GILMAN, LLP, filed proof of claim.

155.    On October 28, 2019, chapter 13 case was converted into Chapter 11 case.

156.    WOODS OVIATT GILMAN, LLP submitted power of attorney attached to proof of

claim stating that U.S. Bank hired Wells Fargo Bank, N.A. as servicing agent for U.S. Bank

("Wells Fargo") to file proof of claim on its behalf as agent of principal with rights to litigate in

bankruptcy court and conduct foreclosure of debtor's property.

157.    I in my Chapter 11 petition listed US Bank's debt as disputed, contingent, unliquidated

and this Court did not make any determination on these issues.

158.    On March 17, 2020, Brittany J. Maxon ("Maxon") from WOODS OVIATT GILMAN,

LLP, on behalf of Wells Fargo filed a motion for relief from the automatic stay in connection

with the property located at 4221 Atlantic Avenue, Brooklyn, NY 11224 (the "Stay Relief Motion").

159.    On April 27, 2020, Maxon filed a letter requesting an adjournment of the hearing for the Stay Relief Motion on consent of the parties to May 22, 2020.

160.    On April 29, 2020 Court adjourned the hearing of the Stay Relief Motion to May 22, 2020, based on the alleged consent of the parties.

161.    On May 18, 2020, I filed a letter-motion objecting to adjournment order and stated that I never discussed with Maxon her request for my consent to adjournment to May 22, 2020 hearing date, and therefore adjournment was fraudulently scheduled without my knowledge and consent. In addition, I requested adjournment from May 22, 2022 to the longest possible date in the future due to COVID-19 lockdown of New York City and my technical problems with computer equipment.

162.    On May 19, 2020, the I filed a Cross motion to Strike and Dismiss with Prejudice the proof of claim filed by Wells Fargo, which was scheduled to be heard on May 22, 2020 (the "Motion to Strike").

163.    In my Motion to Strike I notified the court and WOODS that the motion lacks supporting exhibits and incomplete due to my technical problems with computer equipment failure.

164.    On May 21, 2020, Wells Fargo filed Amended Proof of Claim with amended power of attorney attached.

165.    Attorney Fugate deliberately attached to POC incomplete limited power of attorney ("POA"), **Exhibit L.**

166.    Attorney Fugate, therefore, *knew* that at the time of filing POC attached copy of POA is incomplete, misleading the court and void as evidence of authority to appear in this court

because at the beginning of copy of POA says, "The trusts identified on **Schedule A** (the

"Trusts")…" However, no **Schedule A** attached to this copy of POA. Accordingly, attorney

Fugate *knowingly* failed to *prove identity of creditor and her authority* to appear in this court;

*knowingly misled* the court and filed POC *without proof of authority.* As such, POC is

unauthorized filing and unauthorized practice of law. I have dealt with unauthorized filings by

attorneys involved since 2009 and will show detailed evidence below.

167.    On the top of everything, POA was acknowledged and notarized in Massachusetts. I

understand that "we are not in Kansas anymore," but at least we have to be in Ohio or in

Minnesota where corporate headquarters of USB19 located.

168.    In March of 2020, on numerous occasions I contacted Aleksandra K. Fugate, Esq.,

Brittany J. Maxon, Esq. and others from WOODS by email and politely asked whether Fugate

inadvertently failed to attach a copy of **Exhibit A** to POA. I received no answer.

169.    Accordingly, I demanded an explanation and proof whether the people that signed POA

reside in Massachusetts, whether notary is employee of USB19 and who from Minnesota or Ohio

headquarters authorized them to appoint WF in Massachusetts to conduct foreclosure in New

York. This whole thing is fishy and a Shell Game by slay of hand.

170.    Now, the court should notice, that WOODS *judicially admited* that in order for them to

file any claim against my property in court, the firm needed the power of attorney from lawful

owner and holder of original note and mortgage. According to WOODS they obtained POA only

in 2018, see **Exhibit L**. Accordingly, Alleged creditor did not authorize WOODS to do the state

foreclosure action in 2016 and I am confident that no evidence to the contrary existed because

WOODS refused to produce POA at that time to me. Talking about Estoppels by action.

171.    I predicted that there will be "change of characters" on this charade POC and new attorney with contrived ignorance of the crimes committed would come up with "dog ate my homework" excuse or explanation. Alternatively, WOODS brazenly will go silent. Regardless, they *knowingly failed* to prove their authority to file POC. I will prove *knowledge* in historical factual sequence below.

172.    I will show the court that no matter how involved foreclosure mills named alleged creditor at different times by different names these attorneys knew that the real, lawful claimant or creditor did not exist. I will prove *knowledge* of this *nonexistence* by Contrived Ignorance of crimes committed, contempt of court and deliberate violation of my due process rights.

### If a party seeking relief lacks standing, the trial court does not have jurisdiction to grant the requested relief

173.    Widely used 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1541 (1990) states that Federal requirement is that actions be prosecuted in the name of the real party interest. In this case, "US Bank as trustee," admittedly an agent of the principal, beneficiary, real party in interest – the note owner and holder, trust – Banc of America Funding Corporation, which is not joined here. There is a reason why opposing attorneys failed to do that.

174.    I aver that current, alleged "creditor" has no standing in this case due to numerous reasons, which I will show in detail below, but the main one is – IT DOES NOT EXIST by law or by fact in this court. Accordingly, what attorneys are doing is stealing my property by false pretenses.

175.    I will show that all ALLEGATIONS about note, mortgage, implied securitization, assignment, trustee and trust turned out to be charade, scam from 2005 or 2009, through which I was harmed and suffered greatly.

176.   PLEASE TAKE NOTICE THAT DUE TO MY DISABILITY

AND COVID-19 CONSTRAINTS, I AM UNABLE TO FINISH THIS

AFFIDAVIT ON TIME. THEREFORE, I WILL SUPPLEMENT THIS

AFFIDAVIT OR AMEND IT SHORTLY. THEREFORE, DO NOT

MAKE EARLY REPLY.

Dated: Brooklyn, New York
       July 14, 2020

Michael Krichevsky, DIP
4221 Atlantic Ave
Brooklyn, New York  11224
(718) 687-2300

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| **MICHAEL KRICHEVSKY** | **ORDER** |
| | **CASE #: 1-19-43516-ess** |
| Debtor. | **CHAPTER 11** |

### ORDER PURSUANT TO 11 U.S.C. § 362(D) TERMINATING THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. §362(a)

Upon the motion dated March 16, 2020 of Wells Fargo Bank, N.A. as servicing agent for

U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage

Pass-Through Certificates, Series 2006-F ("Secured Creditor") for an order pursuant to section

362(d) of title 11 of the United States Code ("Bankruptcy Code") vacating the automatic stay to

allow the Secured Creditor enforcement of its rights in and remedies in and to 4221 Atlantic

Avenue, Brooklyn, NY 11224 (the "Property"). This Court, having considered the evidence

presented an*d* the arguments of the parties and with good cause appearing therefor; it is hereby

**ORDERED** that the automatic stay is hereby ~~lifted and vacated~~ *modified* to permit

Secured Creditor *and the Debtor* to ~~foreclose its mortgage on~~ *pursue their rights under*

*applicable law, including their claims and defenses, with respect to* the property located at 4221

Atlantic Avenue, Brooklyn, NY 11224~~; and it is further.~~

~~**ORDERED** that the 14 day stay imposed by the Federal Rules of Bankruptcy Procedure~~

~~4001(a)(3) is hereby waived.~~



Dated: Brooklyn, New York
June 16, 2020

Elizabeth S. Stong
United States Bankruptcy Judge

# EXHIBIT A

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8994 7824 9

Mailed On: 6/8/2020            Order Number: 0002396-01
ClientID:  Woods000438  FC)    Reference Number:   100400

Michael Krichevsky
4221 Atlantic Ave
Brooklyn, NY 11224

GenericAddressInsert.doc                                    Rev. 12/19/2018

# EXHIBIT B

STATE OF NEW YORK
SUPREME COURT: COUNTY OF KINGS
-------------------------------------------------------------X
US BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-F
3476 Stateview Boulevard
Fort Mill, SC 29715

                               Plaintiff,

vs.

MICHAEL KRICHEVSKY, CAPITAL RESOURCES
CORPORATION, NATIONAL CITY BANK, NEW
YORK CITY ENVIRONMENTAL CONTROL BOARD,
NEW YORK CITY PARKING VIOLATIONS
BUREAU, NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

JOHN DOE (Said name being fictitious,
it being the intention of Plaintiff to
designate any and all occupants of
premises being foreclosed herein, and
any parties, corporations or entities,
if any, having or claiming an interest
or lien upon the mortgaged premises.)

                           Defendant(s).
-------------------------------------------------------------X

**COMPLAINT**

INDEX NO.: 25477/09

MORTGAGED PREMISES:
4221 ATLANTIC AVENUE
BROOKLYN, NY 11224

SBL #:
BLOCK 7026, LOT 53

       The Plaintiff by its attorneys, Steven J. Baum, P.C., for its complaint against the Defendant(s) alleges upon information and belief as follows:

                          AS AND FOR A FIRST CAUSE OF ACTION:

       **FIRST:** Plaintiff is a national banking association duly organized and existing under and by virtue of the laws of the United States of America and having its principal place of business in Cincinnati, OH, and the owner and holder of a note and mortgage being foreclosed.

       **SECOND:** On or about the 14th day of December, 2005, MICHAEL KRICHEVSKY duly executed and delivered an adjustable rate note whereby MICHAEL KRICHEVSKY promised to pay the sum of $747,600.00 with interest on the unpaid balance of the debt.

       **THIRD:** That as security for the payment of said note MICHAEL KRICHEVSKY duly executed and delivered a mortgage in the amount of $747,600.00 which mortgage was recorded as follows and mortgage tax paid thereon:

           Recording Date: December 21, 2005
           Instrument Number: 2005000701375
           County (or City Register of): Kings

The mortgage was subsequently assigned to US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F by assignment dated the 25th day of August, 2009 and sent for recording in the Office of the Clerk of Kings County.

FOURTH:    The mortgaged premises are commonly known as 4221 ATLANTIC AVENUE, BROOKLYN, NY 11224 and more fully described in "Schedule A" attached to this complaint.  The tax map designation is known as all or part of SBL: Block 7026, Lot 53.

FIFTH:  That the Defendant(s) MICHAEL KRICHEVSKY so named, has/have failed to comply with the conditions of the mortgage and note by failing to pay principal and interest and/or taxes, assessments, water rates, insurance premiums, escrow and/or other charges that came due and payable on the 1st day of May, 2009 as more fully set forth below.  Accordingly, Plaintiff elects to call due the entire amount secured by the mortgage.

SIXTH:  There is now due and owing on said mortgage the following amounts:

Principal balance: $746,256.13
Interest Rate: 6.5%
Date interest accrues from: April 1, 2009
Escrow balance: $160.68
Late charges: $323.36
Inspection fees: $15.00

Together with monies advanced for taxes, insurance, maintenance of premises and the costs, allowances and reasonable attorney's fees if permitted by the mortgage.  The interest rate stated above may change in accordance with the adjustable rate feature of the note or loan agreement.

SEVENTH:  In order to protect its security interest the Plaintiff or its agent has paid or may be compelled to pay during the pendency of this action, taxes, assessments, water rates, insurance premiums and other charges affecting the mortgaged premises.  Plaintiff requests that any sums it or its agent has paid, together with interest, be included in the sum otherwise due as provided for and secured by the mortgage.

EIGHTH:  Upon information and belief all the defendants herein have or claim to have some interest in or lien upon said mortgaged premises or some part thereof which interest or lien, if any, has accrued subsequent to the lien of Plaintiff's mortgage, or has been paid or equitably subordinated to Plaintiff's mortgage, or has been duly subordinated thereto.  The reason for naming said defendants is set forth in "Schedule B" that is attached to this complaint.

NINTH:  The reason for naming any governmental agency or instrumentalities of the Federal, State or local government (however designated), is set forth in "Schedule C" that is attached to this complaint.

TENTH:  Upon information and belief the defendant(s) "John Doe" are occupants of the premises being foreclosed, or may be any persons, corporations or entities who claim, or may claim, a lien or other interest against the premises.

ELEVENTH:  If applicable, the mortgage originated in compliance with Banking Law Sections 595-a and 6-l or 6-m and the Plaintiff has complied with all of the provisions of Section 595-a of the Banking law and any rules and regulations promulgated thereunder, Section 6-l and 6-m of the Banking Law, and Section 1304 of the Real Property Actions and Proceedings Law.

4

TWELFTH: Plaintiff requests that in the event this action proceeds to judgment of foreclosure and sale, said premises be sold subject to: any state of facts an inspection of the premises would disclose or an accurate survey of the premises would show; covenants, restrictions, easements and public utility agreements of record, if any; building and zoning ordinances and possible violations of the same; any rights of tenants or persons in possession of the premises; any equity of redemption of the United States of America to redeem the premises within 120 days; prior mortgages and liens, if any. If the mortgage secures more than one parcel, Plaintiff requests the judgment of foreclosure provide for the sale of the parcels in a particular order to the extent necessary to satisfy the indebtedness.

THIRTEENTH: There are no other actions or pending proceedings at law to collect or enforce the note and mortgage.

AS AND FOR A SECOND CAUSE OF ACTION,
PLAINTIFF HEREIN ALLEGES:

FOURTEENTH: Plaintiff repeats and re-alleges the allegations contained in Paragraphs "FIRST" through "THIRTEENTH", as though fully set forth herein.

FIFTEENTH: Upon information and belief, all the defendants herein have or claim to have some interest in or lien upon said mortgaged premises or some part thereof which interest or lien, if any, has accrued subsequent to the lien of Plaintiff's mortgage, or has been paid or equitably subrogated to Plaintiff's mortgage, or has been duly subordinated thereto. The reason for naming said defendants is set forth in Schedule "B and/or C" that is attached to this complaint.

SIXTEENTH: It appears from the public records that Defendant CAPITAL RESOURCES CORPORATION holds a lien which is adverse to the Plaintiff's interest and which remains open of record as follows:

Recording date:  May 28, 1986
Book/Page:  1818/323
(County of)(City Register of): Kings

Said mortgage was assigned by an Assignment of Mortgage recorded the 28th day of May, 1986 in Book 1818 at Page 332.

SEVENTEENTH: The interest of Plaintiff in the property is set forth in paragraph "FIRST", above.

EIGHTEENTH: Upon information and belief, all of the defendants are known, and none of them are infants, mentally retarded, mentally ill or alcohol abusers.

NINETEENTH: Upon information and belief, there are no persons not in being or ascertained at the commencement of this action who by any contingency contained in a devise or otherwise, could afterward become entitled to a beneficial estate or interest in the property involved in this action, and any judgment rendered herein will not and may not affect any such person not in being or not ascertained at the time of the commencement of this action.

TWENTIETH: The lien(s) of Defendant CAPITAL RESOURCES CORPORATION appears to be prior and adverse to the mortgage being foreclosed and is subject to be declared invalid and extinguished pursuant to Article 15 of the Real Property Actions and Proceedings Law.

TWENTY-FIRST: Plaintiff hereby requests that the Judgment of Foreclosure state the following:

5

ORDERED, ADJUDGED AND DECREED, that the lien(s) which appear(s) to be prior and adverse to the mortgage being foreclosed, namely the lien of Defendant(s) CAPITAL RESOURCES CORPORATION, is/are hereby declared invalid and extinguished pursuant to RPAPL Article 15; and it is further

ORDERED, ADJUDGED AND DECREED, that Defendant CAPITAL RESOURCES CORPORATION and all persons or entities claiming by, through or under them, be and are hereby forever barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said mortgaged premises; and it is further

ORDERED, ADJUDGED AND DECREED, that the record be reformed to reflect that the lien of Defendant CAPITAL RESOURCES CORPORATION is invalid and extinguished; and it is further

AS AND FOR A THIRD CAUSE OF ACTION,
PLAINTIFF HEREIN ALLEGES:

TWENTY-SECOND:  Plaintiff repeats and re-alleges the allegations contained in Paragraphs "FIRST" through "TWENTY-FIRST", as though fully set forth herein.

TWENTY-THIRD : That the recorded mortgage, that is the subject of this action, accurately references the address of the property encumbered by the mortgage as: 4221 Atlantic Avenue, Brooklyn, New York.

TWENTY-FOURTH: That the legal description contained in deed dated December 14, 2005 and recorded on December 21, 2005 in City Register File No. (CRFN) 2005000701374 (attached hereto as Schedule A-1), accurately describes said property.

TWENTY-FIFTH: That the mortgage recorded December 21, 2005 in City Register File No. (CRFN) 2005000701375 did not have a legal description affixed thereto and the description contained in deed recorded on December 21, 2005 in City Register File No. (CRFN) 2005000701374 should be substituted to reflect the intent of the parties.

TWENTY-SIXTH: Plaintiff hereby requests reformation of the said mortgage recorded December 21, 2005 in City Register File No. (CRFN) 2005000701375 by Order of this Court as contained in a clause in the Judgment of Foreclosure stating the following:

ORDERED, that the legal description in the mortgage recorded December 21, 2005 in City Register File No. (CRFN) 2005000701375 is hereby reformed so that the property description reads as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, known and designated on map entitled "Map of Section A Norton Point" made by Pont and Beach surveyors, 1894 and filed in the Office of Register Kings County, April 20, 1894, #351-352-353 in Block #7 of said map and described with reference to the private road, laid down on said map as follows:

BEGINNING at a point on the Northerly line of Atlantic Avenue on said map, 160 feet Westerly from the intersection of said Northerly line with the Westerly side of Beach 42nd Street;

RUNNING THENCE Westerly along the Northerly line of Atlantic Avenue as it curves to the Westerly line of lot 351 on said map;

THENCE Northerly along the Westerly line of lot 351 (which line is on a radius of the concentric curves of Atlantic and Surf Avenues); 100 feet to the middle line of block between Atlantic and Surf Avenues;

THENCE Easterly along the middle line of the block as it curves, 60 feet to the Westerly line of lot 354 on said map;

THENCE Southerly at right angles to Atlantic Avenue and along the Westerly line of said lot #354, 100 feet to the point or place of BEGINNING.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT:

1. Adjudging and decreeing the amounts due the Plaintiff for principal, interest, costs, late charges, expenses of sale, allowances and disbursements, reasonable attorney's fees if provided for in the mortgage and any monies advanced and paid which are secured by the mortgage.

2. That the defendants and all persons claiming by, through or under them and every other person or entity whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, or whose lien is being challenged by being a defendant in this action, be barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said mortgaged premises.

3. That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due as aforesaid, be decreed to be sold according to law subject to the provisions of paragraph "TWELFTH" of this complaint.

4. That out of the monies arising from the sale thereof, the Plaintiff may be paid the amounts due on said note and mortgage, plus those items referenced in paragraph 1, above, together with any sums expended as aforesaid, with interest as allowed by law upon any advances from the dates of the respective payments, so far as the amount of such money properly applicable thereto will pay the same.

5. That either or any of the parties to this action may become a purchaser upon such sale.

6. That this court, if requested, forthwith appoint a receiver of the rents and profits of said premises with the usual powers and duties.

7. That the defendants referred to in paragraph "FIFTH" of this complaint and any original or subsequent obligors so named in this action, may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto, unless the debt has been listed and discharged in a bankruptcy petition, or unless the Plaintiff is unable to produce a copy of the note, in which case no deficiency judgment will be sought.

8. In the event Plaintiff possesses any other liens against the premises, they shall not be merged with the same. Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of the subject premises by virtue of its position as a judgment or other lien creditor, excluding the mortgage being foreclosed herein.

9. That Defendant CAPITAL RESOURCES CORPORATION's interest in the mortgaged premises, and all persons or entities claiming by, through or under them, be declared invalid and extinguished, and that Defendant CAPITAL RESOURCES CORPORATION and all persons or entities claiming by, through or under them, be barred and foreclosed of and from all right, claim, lien, interest or equity or redemption in and to said mortgaged premises and that the plaintiff be granted reformation of the record to reflect said lien being extinguished.

10. Awarding the relief requested in the SECOND cause of action stated in this complaint.

11.    Awarding the relief requested in the THIRD cause of action stated in this complaint.
12.    That the Plaintiff may have such other and further relief as may be just, equitable and proper.


By: _____
Michael J. Wrona, Esq.
Steven J. Baum, P.C.
Attorneys for Plaintiff
220 Northpointe Parkway Suite G
Amherst, NY 14228
Tel.: 716-204-2400


The law firm of Steven J. Baum, P.C. and the attorneys whom it employs are debt collectors who are attempting to collect a debt. Any information obtained by them will be used for that purpose.

8

# EXHIBIT C



## *ASSIGNMENT OF MORTGAGE*

County of KINGS, State of New York

Assignor: Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns, 3300 SW 34th Ave. Suite 101, Ocala, FL 34474

Assignee: US Bank National Association, as Trustee for Mortgage Pass-Through Certificates, Series 2006-F, 180 East 5th St., St. Paul, MN 55101

Original Lender: Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns

Mortgage made by MICHAEL KRICHEVSKY, dated the 14th day of December, 2005 in the amount of Seven hundred and forty seven thousand six hundred dollars ($747,600.00) and interest, recorded on the 21st day of December, 2005 in the Office of the Clerk of the County of KINGS at Certificate/Docket Number 2005000701375.

This said mortgage has not been otherwise assigned.

Property Address: 4221 ATLANTIC AVENUE, BROOKLYN, NY 11224
SBL # Block 7026 Lot 53

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this 25th day of August, 2009.

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc. as nominee for Fairmont Funding, Ltd., its successors and assigns

BY: _Elpiniki M. Bechakas_
Elpiniki M. Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie    ss:
On the 25th day of August, in the year 2009 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki M. Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_Jeanette Sheliga_
Notary Public

**SEAL**

Jeanette Sheliga
Notary Public State of New York
Qualified in Niagara County
My Commission Expires July 27, 2013

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

# ASSIGNMENT FROM MERS CHECKLIST

Member Name:                                                                                      Org ID:

MERSCORP Holdings Integrator:

In what state(s) will this assignment be used? _____

**Assessment of compliance with the MERS® System requirements:**

| # | Review Item | YES - complies | NO - does not comply |
|---|---|---|---|
| 1 | The assignment contains a MIN (or the location for the MIN is evident). | | |
| 2 | The assignment contains the SIS Number (888-679-6377 or 888-679-MERS). | | |
| 3 | (If the assignment contains an address for MERS) The address for MERS is P.O. Box 2026, Flint, MI 48501-2026. | | |
| 4 | MERS's name is spelled out as "Mortgage Electronic Registration Systems, Inc." | | |
| 5 | MERS is referred to as mortgagee (if SI is a mortgage), beneficiary (if SI is a deed of trust), or grantee (if SI is a security deed). | | |
| 6 | If MERS is referred to as a nominee, the language "its successors and assigns" appears after the named lender. | | |
| 7 | MERS is not referred to as any of the following: servicer, lender, investor, beneficial owner, note owner, trustee, or financial institution. | | |
| 8 | The assignment does not contain note transfer language (e.g. "together with the note/indebtedness"). | | |
| 9 | The assignment does not contain an effective date differing from the date of execution. | | |
| 10 | The assignment does not use the word "sells" to describe the action being taken by MERS. | | |
| 11 | The assignment does not refer to the interest being assigned by MERS as the "beneficial interest." | | |
| 12 | The assignment is prepared for signature by an Assistant Secretary, Assistant Vice President or Vice President of MERS. | | |

*If assignment is for use in **Indiana, Pennsylvania, New York or Mississippi**, replace number 3 with:

| # | Review Item | YES - complies | NO - does not comply |
|---|---|---|---|
| 3 | The address for MERS is 1901 E. Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026. | | |

*If the assignment is for use in **Washington, Oregon or Montana**, replace number 5 with:

| # | Review Item | YES - complies | NO - does not comply |
|---|---|---|---|
| 5 | MERS is not referred to as beneficiary, but is instead referred to as nominee of the beneficiary and beneficiary's successors and assigns. | | |

**Additional Comments by Integrator:**

|  |
|---|
|  |

DISCLAIMER:  MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc. make no representations, covenants or warranties regarding the legal enforceability or effect of the document(s) to which this review pertains.  This is solely a review for compliance with the requirements of the MERS® System, which are found in the MERS® System Rules of Membership and MERS® System Procedures Manual.  The results of this review notwithstanding, each MERS® System member is responsible for ensuring that its documents comply with the MERS® System requirements.

4/24/2020                                    MERS® ServicerID - Results



www.mers-servicerid.org

**1 record matched your search:**

MIN: 1002948-0001201848-3   Note Date: 12/14/2005          MIN Status: Inactive

Servicer:  <u>Wells Fargo Home Mortgage a Division of Wells</u>          Phone: (651) 605-3711
<u>Fargo Bank NA</u>
          Minneapolis, MN

If you are a borrower on this loan, you can <u>click here</u> to enter additional information and
display the Investor name.

<u>Return to Search</u>

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to <u>www.mersinc.org</u>

Copyrights 2020 by MERSCORP Holdings, Inc.

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F,<br>3476 Stateview Boulevard<br>Fort Mill, SC 29715<br><br>          Plaintiffs,<br>      -against-<br>MICHAEL KRICHEVSKY, CAPITAL RESOURCES CORPORATION, NATIONAL CITY BANK, et all,<br>                Defendant. | INDEX NO. 25477/2009<br><br>NOTICE OF MOTION TO DISMISS AND FOR SANCTIONS<br>Justice Bert Bunyan<br>Oral argument is not requested |

COUNSELORS:

**PLEASE TAKE NOTICE**, that upon the annexed affidavit of MICHAEL KRICHEVSKY, Pro Se, affirmed to the    day of January, 2010, an upon all the pleadings and proceedings heretofore had herein, the undersigned will move before this Court at an IAS Part 8, room 438, at the Courthouse located at 360 Adams Street, Brooklyn, New York on the    day of    , 2010 at 9:30 a.m. in the forenoon of that day or as soon thereafter as counsel can be heard:

For an order pursuant to CPLR 3211(a), dismissing the complaint herein on the grounds that: Plaintiff has no legal capacity to sue, it fails to state a cause of action and complaint was not properly served; and for such other and further relief as to this Court may seem just and proper.

The above-entitled action is foreclosure. This action is not on the trial calendar.

**TAKE FURTHER NOTICE** that, pursuant to Section 2214(b) of the Civil Practice Law and Rules, all answering papers, if any, shall be served at least seven (7) days before the return date of this motion.

Dated: Brooklyn, New York
     January 25, 2010

                    _____
                    Michael Krichevsky, Pro Se
                    4221 Atlantic Ave
                    Brooklyn, New York  11224
                    (718) 687-2300

STEVEN J. BAUM, P.C.
Attorneys for Plaintiff
220 Northpointe Parkway, Suite G
Buffalo, New York 14228

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR          INDEX NO. 25477/2009
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
2006-F,

                      Plaintiffs,                            AFFIDAVIT IN SUPPORT
      -against-                                                                     OF MOTION TO DISMISS
                                                                                                    AND FOR SANCTIONS
MICHAEL KRICHEVSKY, CAPITAL RESOURCES
CORPORATION, NATIONAL CITY BANK, et all,
                      Defendant.

---

STATE OF NEW YORK          ss.:
COUNTY OF KINGS

MICHAEL KRICHEVSKY, Pro Se, by special appearance affirmatively deposes and says:

1.    I make this affidavit in support of this motion to dismiss the plaintiffs' complaint.

2.    This is foreclosure action.

3.    The Court lacks personal jurisdiction over the Defendant due to Plaintiff's failure to serve process in accordance with Section 308 of the Civil Practice Law and Rules. Plaintiff did not send debt validation letter, did not comply with requirements of Paragraphs 1303 and 1304 of RPAPL. Plaintiff's affidavits of service (Exhibit A) constitute SEWER SERVICE. The address of 89 Fairview Avenue, New York, New York is not single-family house without an apartment number as it misleadingly appears from affidavit, but apartment building where Defendant (a) did not reside as claimed by process server Robert Winckelmann; and (b) there is no John Krichevsky in Defendants family either. This proves the process server did not go to this location and made up facts in this affidavit. If copy of the complaint really mailed at this address – it would be undeliverable. The second Affidavit by Jeffry Conocchioli fails to state that at the time of service at the address of 4221 Atlantic Ave there was renovation going on and he must have seen it. There was no defendant's dwelling where he lived with the door where pleadings could be attached. That, again, proves that process server did not go to that location. Plaintiff knew from Defendant' conversations with the servicer that there is renovation going on. On the other hand, servicer knew where Defendant worked. What a better place to serve defendant than place of abode? All of the above makes me think that Plaintiff went out of its way in order to perform SEWER SERVICE and tried to obtain a default judgment. Accordingly, defendant demands sanctions for frivolous lawsuit pursuant to

Plaintiff for commencing and maintaining this frivolous action and awarding costs, disbursements and attorneys' fees.

4.    The Plaintiff's complaint is so vague and ambiguous that I can not reasonably be required to prepare a responsive pleadings because the complaint fails to attach any document to identify who or what " US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F" is; nor can I determine from the Plaintiff's complaint upon what facts the Plaintiff is claiming to be the real party in interest with legal capacity to pursue this foreclosure action on a promissory note which is required by the New York State Law. Plaintiff in Complaint (Exhibit B) does not affirmatively state when it became the owner of mortgage and note. Nor plaintiff affirmatively states that it is the owner and holder of the mortgage and note. Plaintiff does not state whom I delivered the mortgage and note and who assigned my instruments to them. No assignment, mortgage or note attached to the complaint either.

5.    According to UCC § 3-301 a "person entitled to enforce" the promissory note, if negotiable, is limited to:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder; or

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or section 3-418(d).

6.    The Plaintiff's complaint fails to contain proved and sufficient facts to establish who the Plaintiff is or the Plaintiff's relationship to the Defendant. Due to the foregoing, the complaint should be dismissed in its entirety for lack of legal capacity to sue and failure to state a cause of action.

WHEREFORE, it is respectfully requested that this motion be granted in its entirety, or as an alternative to order the plaintiff (a) comply with RPAPL to make its complaint more definite and certain in the particulars identified hereinabove, for an award of attorney's fees and for such other and further relief as to Interest of Justice and this Court seems just and proper, including the costs of this motion.

X_____

MICHAEL KRICHEVSKY, Pro Se

Sworn to before me this
____ day of January 2010

# EXHIBIT E

Michael Krichevsky
4221 Atlantic Ave
Brooklyn, NY 11224

WELLS FARGO HOME MORTGAGE
3476 Stateview Blvd
Fort Mill, SC 29715

RE: Loan Number ending in 3295
Property: 4221 Atlantic Ave
Brooklyn NY 11224

September 27, 2011

CERTIFIED MAIL RRR    7010 1870 0003 1664 1694

RESPA QUALIFIED WRITTEN REQUEST, TILA REQUEST, ANSWER & COMPLAINT,
DISPUTE OF DEBT, VALIDATION OF DEBT LETTER & NOTICE OF NON-
ABANDONMENT

This letter is a "qualified written request" in compliance with, and under, the Real Estate
Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500,
and The Gramm Leach Bliley Act

Dear Mr. Bockenstedt:

I am answering to your September 7, 2011 letter (copy enclosed), objecting to your company' or agent'
notice that my property vacant (copy enclosed), and to complain about the accounting and servicing of this
mortgage. First of all, your offer to modify my mortgage sounds like an insult of my intelligence as my
numerous requests and actual applications for modification were ignored since 2008. Further, I request
clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits,
debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this
account from its origination to the present date.

It is my understanding that your company may have engaged in one or more predatory servicing or lending
and servicing practices. As a consumer, I am extremely concerned that predatory servicing and/or
predatory "lender" practices, may have affected me, personally.

I am troubled that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales
and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance
sheets; deceptive, abusive and fraudulent accounting; undisclosed insurance and hedging tricks (paid for
with my money) and practices may have also negatively affected my credit rating, mortgage account
and/or the debt or payments that I made, or may be allegedly obligated to make. I am aware that my
alleged debt was/might have been paid many times over. And finally, I am very concerned that after a
thorough review of all papers concerning this mortgage, I have found absolutely no evidence that I actually
received a loan. The pleadings that I got from your lawyers unambiguously asserted that I did receive a
loan.

In light of the above, I hereby demand that you provide me with the following four categories of
documentation:

56. In a spreadsheet form, or in letter form in a columnar format, please detail each and every credit on this account, and the date such credit was posted to this account, as well as the date any credit was received.

57. In a spreadsheet form, or in letter form in a columnar format, please detail each debit on this account, and the date debit was posted to this account, as well as the date any debit was received.

58. For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize.

59. For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

MORTGAGE & ASSIGNMENTS

60. A "yes or no" question: has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt, been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date?

61. If not, why?

62. A "yes or no" question: is your company, the servicers of this mortgage account, the holder in due course and beneficial owner of this mortgage, monetary instrument, and/or deed of trust?

63. A "yes or no" question: have any sales, transfers, or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?

64. If yes, please detail for me the names of each seller, purchaser, assignor, assignee, or any holder in due course to any right or obligation of the note, mortgage, deed or security instrument that was executed, securing the obligation on this account that was not recorded in the county records where my property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

ATTORNEY FEES. For purposes of my questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" synonymously.

65. A "yes or no" question: have attorney fees ever been assessed to this account from the inception of this account to the present date?

66. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date, and the date of such assessment to this account.

67. A "yes or no" question: have attorney fees ever been charged to this account from the inception of this account to the present date?

68. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account.

69. A "yes or no" question: have attorney fees ever been collected from this account from the inception of this account to the present date?

70. If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account.

71. Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

72. Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed, authorizing the assessment, charge or collection of attorney fees.

73. Please detail each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

74. Please detail each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

75. Please detail any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

76. Please detail any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

77. A "yes or no" question: has interest been charged on any attorney fee assessed or charged to this account?

78. A "yes or no" question: is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?

79. How much in total attorney fees have been assessed to this account from the inception of this account until present date?

80. How much in total attorney fees have been collected on this account from the inception of this account until present date?

81. How much in total attorney fees have been charged to this account from the inception of this account until present date?

82. Please provide copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that been assessed or collected from this account.

SUSPENSE/UNAPPLIED ACCOUNTS. For purposes of this section, please treat the term "suspense account" and "unapplied account" synonymously.

83. A "yes or no" question: has there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

84. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, skip the questions in this section dealing with suspense and unapplied accounts.

85. In a spreadsheet, or in letter form in a columnar format, please detail each suspense or unapplied transaction, both debits and credits that occurred on this account from the inception of this account until present date.

LATE FEES. For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

86. A "yes or no" question: have you reported the collection of late fees on this account as interest in any statement to me or to the IRS?

87. A "yes or no" question: have any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS?

88. A "yes or no" question: do you consider the payment of late fees as liquidated damages to you for not receiving payment on time?

89. A "yes or no" question: are late fees considered interest?

90. Please detail what expenses and damages you incurred for any late payment I made.

91. A "yes or no" question: were any of these expenses or damages charged or assessed to this account in any other way?

92. If yes, please describe what expenses or charges were charged or assessed to this account.

93. Please describe what expenses you or others undertook due to any late payment I made.

94. Please describe what damages you or others sustained due to any late payment I made.

95. Please identify the provision, paragraph, section, or sentence of the note, mortgage, deed of trust, or agreement I signed that authorized the assessment or collection of late fees.

96. Please detail each separate late fee assessed to this account, and for which corresponding payment period or month such late fee was assessed, from the inception of this account to present date.

97. Please detail each separate late fee collected from this account, and for which corresponding payment period or month such late fee was collected, from the inception of this account to present date.

98. Please detail any adjustments in late fees assessed, and on what date such adjustment was made, and the reasons for such adjustment.

99. A "yes or no" question: has interest been charged on any late fee assessed or charged to this account?

100. A "yes or no" question: is interest allowed to be assessed or charged on late fees charged or assessed to this account?

101. A "yes or no" question: have any late charges been assessed to this account?

102. If yes, how much in total late charges have been assessed to this account from the inception of this account until present date?

103. Please cite the exact months or payment dates you, or other previous servicers of this account, claim any late payments have been made from the inception of this account to the present date.

104. A "yes or no" question: have late charges been collected on this account from the inception of this account until present date?

105. If yes, how much in total late charges have been collected on this account from the inception of this account until present date?

PROPERTY INSPECTIONS. For purposes of this section, "property inspection" and "inspection fee" refer to any inspections of the property at the above address.

106. A "yes or no" question: have any property inspections been conducted on this property from the inception of this account until the present date?

107.    If your answer is no, you can skip the rest of these questions in this section concerning property inspections.

108.    If yes, please provide the date of each property inspection conducted on the property that is the secured interest for this mortgage, deed or note.

109.    Please provide the price charged for property inspection.

110.    Please provide the date of each property inspection.

111.    Please provide the name & address of each company and/or person who conducted each property inspection on the property.

112.    Please explain why property inspections were conducted.

113.    Please explain how property inspections are beneficial to the grantor/trustor.

114.    Please explain how property inspections are protective of the property.

115.    Please explain your policy on property inspections.

116.    A "yes or no" question: do you consider the payment of inspection fees as a cost of collection?

117.    If yes, why?

118.    A "yes or no" question: do you use property inspections to collect debts?

119.    Have you used any portion of the property inspection process on this property to collect a debt, payment or obligation?

120.    If yes, please answer when and why?

121.    Please cite the provision, paragraph, section or sentence of the note, mortgage, deed of trust, or any agreement that authorized the assessment or collection of property inspection fees.

122.    A "yes or no" question: have you labeled as a "misc. advance" in any record or document that actually refers to a property inspection?

123.    If yes, why?

124.    A "yes or no" question: have you labeled as a legal fee or attorney fee in any record or document that was actually a property inspection?

125.    If yes, why?

126.    Please detail each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

127.    Please detail each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

128.    Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

129.    Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

130.    A "yes or no" question: has interest been charged on any inspection fees assessed or charged to this account?

131.    If yes, when did these charges occur and how much was charged?

132.    A "yes or no" question: is interest allowed to be assessed or charged on inspection fees charged or assessed to this account?

133.    How much in total inspection fees have been assessed to this account from the inception of this account until present date?

134.    How much in total inspection fees have been collected on this account from the inception of this account until present date?

135.    Please forward to me copies of all property inspections made on my property in this mortgage account file.

136.    A "yes or no" question: has any fee charged or assessed for property inspections been placed into escrow account?

BPO FEES

137.    A "yes or no" question: have any BPOs (Broker Price Opinions) been conducted on the property?

138.    If yes, please provide the date of each BPO conducted on the property, which is the secured interest for this mortgage, deed or note.

139.    If yes, please tell us who conducted each BPO.

140.    Please provide the price of each BPO.

141.    Please explain why BPOs were conducted on the property.

142.    Please explain how BPOs are beneficial to the homeowner.

143.    Please explain how BPOs are protective of the property.

144.    Please explain your policy on BPOs.

145.    A "yes or no" question: have any BPO fees been assessed to this account?

146.    If yes, how much in total BPO fees have been assessed to this account?

147.    A "yes or no" question: have any BPO fees been charged to this account?

148.    If yes, how much in total BPO fees have been charged to this account?

149.    Please cite the specific clause, paragraph and sentence in the note, mortgage or deed of trust, or any agreement, that allows you to assess, charge, or collect a BPO fee from the homeowner.

150.    Please provide copies of all BPO reports that have been done on the property.

151.    A "yes or no" question: has any fee, charged or assessed for A BPO, been placed into escrow?

FORCED-PLACED INSURANCE

152.    A "yes or no" question: have you placed or ordered any forced-placed insurance policies on the property?

153.    A "yes or no" question: have you insured this property against payment default by borrower with a policy such as PMI or any other type of insurance?

154.    A "yes or no" question: have you hedged this property against payment default by borrower or other party with some "exotic policy or procedure", which I will call "policy" for a lack of better word to simplify my questions?

155.    A "yes or no" question: have you declared, reported and/or filed a claim with any entity stating that this property is in default?

156.    If yes, provide the date each policy was ordered or placed on the property, or default was reported and to who, that is the secured interest for this mortgage or note.

157.    What was the price of each policy?

158.    Who was the agent for each policy?

159.    Why was each policy placed on the property?

160.    Explain how these policies are beneficial to the homeowner.

161.    Explain how these policies are protective of the property.

162.    Explain your policy on forced-placed insurance.

163.    A "yes or no" question: have any forced-placed insurance fees been assessed to this mortgage or escrow account?

164.    If yes, how much in total forced-placed policy fees have been assessed to this account?

165.    A "yes or no" question: have any forced-placed insurance fees been charged to this mortgage or escrow account?

166.    If yes, how much (dollar amount) in total forced-placed insurance fees have been charged to this mortgage or escrow account?

167.    Please cite, specifically, what clause, paragraph, and sentence in the note and mortgage, or any agreement that allows you to assess, charge, or collect forced-placed insurance fees or payments.

168.    Do you have any relationship with the agent or agency that placed any policies on the property? If yes, please describe.

169.    A "yes or no" question: do you have any relationship with the carrier that issued any policies on the property? If yes, please describe.

170.    A "yes or no" question: has the agency or carrier you used to place a forced-placed insurance policy on the property provided you any service, computer system, discount on policies, commissions, rebates, or any form of consideration? If yes, please describe.

171.    A "yes or no" question: do you maintain a blanket insurance policy to protect your properties when customer policies have expired?

172.    Please send copies of all forced-placed insurance policies that have been ordered on the property.

SERVICING RELATED QUESTIONS.

173.    For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

174.    A "yes or no" question: did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

175.    A "yes or no" question: did the originator of this account or previous servicers of this account, have a warehouse account agreement or contract with your company?

176.    A "yes or no" question: did the originator of this account, or previous servicers of this account, receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating, or administering this loan?

177.    If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate, or other financial consideration paid to the originator of this account by your company or any affiliate.

178.    Please identify where the originals of this entire account file are currently located and how they are being stored, kept, and protected?

179.    What is the exact location of the original signed monetary instrument, or mortgage? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

180.    What is the exact location of the original signed mortgage and note? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

*181.*    A "yes or no" question: since the inception of this loan, has there been any assignment of the monetary instrument/asset to any other party?

*182.*    If yes, identify *the names & addresses of each individual, party, bank, trust or entity that has received such assignment.*

183.    A "yes or no" question: since the inception of this loan, has there been any assignment of the mortgage and/or note, to any other party?

184.    If yes, please identify the names & addresses of each individual, party, bank, trust or entity that has received such assignment.

185.    A "yes or no" question: since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party?

186.    If yes, please identify the names & addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

187.    A "yes or no" question: since the inception of this loan, have any sub-servicers serviced any portion of this mortgage loan?

188.    If yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage loan.

189.    A "yes or no" question: has this mortgage account been made a part of any mortgage pool since the inception of this loan?

190.    If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

191.    Has each assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

192.    A "yes or no" question: has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program?

193.    If yes, please identify the name and address of each individual, entity, party, bank, trust or organization or servicers that has been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

194.    A "yes or no" question: have there been any investors (as defined in your industry) who have participated in any mortgage-backed security, collateral mortgage obligation, or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date?

195.    If yes, please identify the name and address of each and every individual, entity, organization and/or trust.

196.    Please identify the parties to all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above, and include their mailing addresses.

197.    Please provide copies of all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements, and any agreement related to this account from its inception to the current date.

198.    How much was paid by you for this individual mortgage account?

199.    If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

200.    If part of a mortgage pool, of the principal balance above, what was the percentage paid by you used to determine the purchase price of this individual mortgage loan?

201.    Who did you issue a check or payment to for this mortgage loan?

202.    Please provide me copies with the front and back of the canceled check.

Please provide the requested documents and a detailed answer to each of the above-stated questions, within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to further document requests.

Copies of this qualified written request, validation of debt, RESPA/TILA and request for accounting and legal records, dispute of debt letter will be sent to the FTC, HUD, Thrift Supervision, all relevant state and federal regulators; and other consumer advocates.

Default Provision(s) under this QUALIFIED WRITTEN RESPA REQUEST. WELLS FARGO's or any agents, transfers, or assigns' omissions of, or agreement by their silence of this RESPA REQUEST, via certified rebuttal, of all points, questions, & requests herein, denotes agreement and consent to those points, and the premise of those questions & requests. The potential consequences of this are several and include, but are not limited by, an immediate termination/removal of all right, title, and interests (liens) in Michael

Krichevsky's property or collateral connected to Michael Krichevsky account. Under such conditions, WELLS FARGO waives all immunities and defenses in claims and or violations agreed to in this RESPA REQUEST, including, but not limited by, all of the following:

✓ Michael Krichevsky's right, by breach of fiduciary responsibility and fraud and misrepresentation, to execute a revocation and rescinding of power of attorney and/or other appointment WELLS FARGO may have, or may have had, in connection with my account, and any property and/or real estate connected with my account.

✓ Michael Krichevsky's right to have any certificated or uncertificated security re-registered solely in Michael Krichevsky's name.

✓ Michael Krichevsky's right of collection, via WELLS FARGO's liability insurance and/or bond.

✓ Michael Krichevsky's entitlement in filing and executing any instruments, as power of attorney for, and by, WELLS FARGO, including, but not limited by, a new certificated security, or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where the WELLS FARGO is located.

✓ Michael Krichevsky's right to damages, because of WELLS FARGO's wrongful registration, breach of intermediary responsibility with regard to Michael Krichevsky's asset, by WELLS FARGO issuing to Michael Krichevsky a certified check for the original value of Michael Krichevsky's monetary instrument.

✓ Michael Krichevsky's right to have his account completely set off because of WELLS FARGO's wrongful registration, breach of intermediary responsibility with regard to Michael Krichevsky's monetary instrument/asset, by WELLS FARGO sending confirmation of set off of wrongful liability of Michael Krichevsky and issuing a certified check for the difference between the original value of Michael Krichevsky's monetary instrument/asset and what Michael Krichevsky mistakenly sent to WELLS FARGO as payment for such wrongful liability.

WELLS FARGO or any transfers, agents, or assigns who offer a rebuttal of this RESPA QUALIFIED WRITTEN REQUEST, TILA REQUEST, ANSWER & COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, must do so in the manner of this "RESPA REQUEST", in accordance with, and in compliance with, current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under penalty of perjury, while offering direct testimony with the official capacity as an appointed agent for WELLS FARGO in accordance with WELLS FARGO's Articles of Incorporation and By Laws, duly signed by a current and duly sworn under oath director(s) of such corporation/holding corporation/national association. Any direct rebuttal with certified true and complete accompanying proof, must be posted to the below-provided "notary acceptor" address within sixty business days. If and when no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as WELLS FARGO's judgment and consent/agreement with all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: If and when WELLS FARGO fails by not rebutting to any part of this "RESPA REQUEST" WELLS FARGO agrees with the granting unto Michael Krichevsky's unlimited Power of Attorney and full authorization in signing or endorsing WELLS FARGO's name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of, or to, any Bankruptcy proceeding shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by WELLS FARGO, it waives all claims against Michael

Krichevsky, and/or defenses and remains in effect until satisfaction of all obligation(s) by WELLS FARGO
has been satisfied.


Sincerely,


_____

Michael Krichevsky



FOR INDEPENDENT CONFIRMATION OF RECEIPT OF YOUR RESPONSES, PLEASE MAIL ANY

RESPONSE TO THE FOLLOWING NOTARY ACCEPTOR ADDRESS AND NOTIFY ME THAT REPLY

WAS MAILED TO:



SERVICE CENTER
3177 Coney Island Ave.
Brooklyn NY 11235




NOTICE



"Non Abandonment of Property"



I, Michael Krichevsky, on this date, September 27, 2011, do hereby give "Notice" that the private

property outlined above has not nor will be abandoned. Just because someone from WELLS FARGO

HOME MORTGAGE did not like the appearance of it and posted a notice on my fence that this property

considered abandoned, it does not mean that it is. The undersigned objects and will not abandon it

through any simulation of a legal process as under color of law. Undersigned informs of his

Constitutional and Common Law Right to defend his property from any adverse possession or trespass.

Michael Krichevsky

STATE OF NEW YORK}
                                          } SS:
COUNTY OF KINGS      }

On the 27ᵗʰ day of September, 2011 before me, personally appeared Michael
Krichevsky, personally known to me or has proved to be the person stated above through appropriate
identification, who executed the foregoing instrument.

NOTARY PUBLIC
My Commission Expires:

ALICE ASHER
NOTARY PUBLIC, State of New York
No. 01AS6062200
Qualified in Kings County
Commission Expires July 30, 2013

CC:

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

Office of Housing Enterprise Oversight (OFHEO)
1700 G Street NW, Fourth Floor
Washington, DC 20552

Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street SW
Washington, DC 20410

**U.S. Postal Service**™

**CERTIFIED MAIL**™ **RECEIPT**

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₀

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $2.88 | 0113 |
| Certified Fee | | $2.85 | |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $8.03 | 09/30/2011 |

Sent To
*WELLS FARGO HOME MORTGAGE*
Street, Apt. No.; or PO Box No. *3476 STATEVIEW BLVD*
City, State, ZIP+4 *FORT MILL, SC 29715*

PS Form 3800, August 2006         See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*WELLS FARGO
HOME MORTGAGE
3476 STATEVIEW BLVD.
FORT MILLS, SC 29715*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                          ☐ Agent
                                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

OCT 03 2011

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7010 1670 0003 1664 1694

PS Form 3811, February 2004       Domestic Return Receipt          102595-02-M-1540

# EXHIBIT F



*State of New York Banking Department*

*Weekly Bulletin*
*March 16, 2007*

## SECTION I

This section records the receipt of applications and notices to the Banking Department. Applications and notices received by the Foreign and Wholesale Banks, Community and Regional Banks and Licensed Financial Services Divisions are listed in order of date of receipt; applications and notices received by the Mortgage Banking Division are listed at the end of Section I by type of application or notice. **THE WEEKLY BULLETIN CONSTITUTES THE ONLY WRITTEN NOTIFICATION OF THESE SUBMISSIONS THAT WILL BE ISSUED BY THE BANKING DEPARTMENT.** Any comment on, or objection to, any item contained in this Weekly Bulletin should be presented to the Banking Department within 10 calendar days of the date of this bulletin, unless a different time period is specified in the item. More specifically, such comments or objections, including any that concern CRA-related applications, should be either (a) delivered by mail or in person to The Secretary of the New York State Banking Board, One State Street, New York, New York 10004-1417 before the stated deadline or (b) transmitted by e-mail to BBSecretary@banking.state.ny.us. To view only those current and pending Section I applications and notices which are CRA-related, please click here.

## SECTION II

This section records actions taken by the Superintendent of Banks and/or the Banking Board, and other information concerning the activities of the Banking Department. Actions relating to institutions supervised by the Foreign and Wholesale Banks, Community and Regional Banks and Licensed Financial Services Divisions are listed in order of date of action; actions relating to institutions supervised by the Mortgage Banking Division are listed at the end of Section II by type of action taken.

## SECTION III

This section provides notification of the filing by federally-chartered institutions of applications for new branches to be located in New York received from **Mr. Fred D. Finke, Deputy Comptroller, Northeastern District, 1114 Avenue of the Americas, Suite 3900, New York, NY 10036** and **Ms. Karen M. Cervera, Corporate Activities, Office of Thrift Supervision, 10 Exchange Place, 18th Floor, Jersey City, NJ 07302.** Any comment or objection in relation to any application in Section III should be communicated immediately to the supervisor of the institution involved, with a copy furnished to this office. This section is provided as a courtesy to New York State-regulated banking institutions; additional information relating to federally-chartered institutions is available in the Office of the Comptroller of the Currency's Weekly Bulletin or its Web site: http://www.occ.treas.gov/ and via the Office of Thrift Supervision's Web site at: http://www.ots.treas.gov.

## GENERAL INFORMATION

Each item in the Weekly Bulletin is identified by a two-letter code indicating the type of institution and a three-letter code indicating the Banking Department Division which has supervisory responsibility for the institution. The following is a list of the codes and their meanings:

### Institution Codes

| | |
|---|---|
| BK = Bank | FB = Foreign Branch |
| TR = Trust Company | FR = Foreign Representative Office |
| PB = Private Banker | PR = Premium Finance Agency |
| SD = Safe Deposit Company | SF = Sales Finance Agency |
| HC = Holding Company | LL = Licensed Lender |
| SB = Savings Bank | TM = Transmitter of Money |
| MK = Merchant Bank | BP = Budget Planner |
| SL = Savings and Loan Association | CC = Check Casher |
| CU = Credit Union | MB = Mortgage Banker |
| IC = Investment Company | BR = Mortgage Broker |

1110 South Avenue, Suite 100, Staten Island, NY 10314
Effective Date: March 06, 2007

March 14, 2007 (BR-MBD)
Full Service Branch
Empire Equity Group, Inc. D/B/A 1st Metropolitan Mortgage
30 Riveredge Road, 2nd Floor, Tenafly, NJ 07670
Effective Date: March 12, 2007

March 14, 2007 (BR-MBD)
Full Service Branch
NRF Funding Corp.
500 Merrick Road, Rockville Centre, NY 11570
Effective Date: March 07, 2007

---

**License to engage in the business of a Mortgage Banker Branch surrendered:**

March 13, 2007 (MB-MBD)
Full Service Branch
SMC Mortgage Company In Lieu of True Name Sunset Mortgage Company, LP
1725 Sheepshead Bay Road, Brooklyn, NY 11235
Effective Date: December 28, 2006

March 14, 2007 (MB-MBD)
Full Service Branch
Fairmont Funding, LTD.
2919 Avenue K, Brooklyn, NY 11210
Effective Date: March 07, 2007

March 14, 2007 (MB-MBD)
Full Service Branch
Fairmont Funding, LTD.
421 Route 59, Store #7, Monsey, NY 10952
Effective Date: March 07, 2007

March 14, 2007 (MB-MBD)
Full Service Branch
Fairmont Funding, LTD.
3200 Chestnut Street, Oneonta, NY 13820
Effective Date: March 07, 2007

March 14, 2007 (MB-MBD)
Full Service Branch
Fairmont Funding, LTD.
5804 16th Avenue, Brooklyn, NY 11204
Effective Date: March 07, 2007

March 14, 2007 (MB-MBD)
Full Service Branch
Vertical Lend Inc., DBA Boulder Financial Group Additional DBA(S): Mortgage Warehouse
Lender Lead Solutions LLS Financial
4175 Veterans Memorial Highway, Suite 206, Ronkonkoma, NY 11779
Effective Date: March 12, 2007

March 14, 2007 (MB-MBD)
Full Service Branch
Equity One Mortgage Company In Lieu of True Name Equity One, Inc.
1639 Route 10 East, Parsippany, NJ 07054
Effective Date: March 12, 2007

March 14, 2007 (MB-MBD)

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------X
US Bank National Association, as Trustee for Mortgage
Pass-Through Certificates, Series 2006-F

**AFFIRMATION IN SUPPORT**

Plaintiff,

-against-                                    Index No.: 25477/2009

Michael Krichevsky, Capital Resources Corporation,
National City Bank, New York City Environmental Control
Board, New York City Parking violations Bureau, New
York City Transit Adjudication Bureau,

John Doe (Said name being fictitious, it being the intention
of Plaintiff to designate any and all occupants of premises
being foreclosed herein, and any parties, corporations or
entities, if any, having or claiming an interest or lien upon
the Mortgaged premises.)

Defendants.
----------------------------------------------------------X

**Settlement Conference Held March 17, 2010, May 19, 2010, June 24, 2010, July 7, 2010, August 16, 2010, September 22, 2010 and October 28, 2010 defendant failed to appear, matter released from conference part ;**

**Ordered permission to proceed with Foreclosure on or about October 28, 2010.**

Kent O. Markgraf, an attorney admitted to practice law in the Courts of the State of New York, hereby affirms the following to be true under the penalty of perjury:

1.      That I am an associate with the firm of Frenkel, Lambert, Weiss, Weisman & Gordon, LLP, attorneys for the Plaintiff and am fully familiar with the facts and circumstances hereinafter contained and submit this affirmation in support of plaintiff's application to restore this action to the Court's calendar; to vacate the Order of the Hon. Lawrence Knipel dated August 1, 2013; for an Order appointing a referee to compute the total sums due and owing to plaintiff; for a Default Judgment pursuant to CPLR § 3215; for an Order amending the caption

excising defendants, Capital Resources Corporation and the John Doe defendants; for an Order

amending, *nunc pro tunc*, plaintiff's name to U.S. Bank National Association, as Trustee for

Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F and

amend the caption accordingly for an Order amending the Mortgage, *nunc pro tunc*, by adding

the legal description from the deed; and for such other and further relief as to this court may

deem just and proper

      2.     As evidenced by the Summons and Complaint, copies of which are annexed

hereto as **Exhibit "A"**, this is an action to foreclose a Mortgage on property located at 4221

Atlantic Avenue Brooklyn, NY 11224. The defendant, Michael Krichevsky, executed a Note on

December 14, 2005 in favor of Fairmont Funding, Ltd.  As security for the Note, defendant,

Michael Krichevsky, executed a Mortgage in favor of Mortgage Electronic Registration Systems,

Inc., as Nominee for Fairmont Funding, Ltd. to secure payment of the principal sum of

$747,600.00. The Mortgage was recorded on December 21, 2005 in CRFN 2005000701375  in

the Office of the City Register of the City of New York. An assignment was than executed on

August 25, 2009 into US Bank, National Association, by an which was recorded on October 19,

2009 as CRFN 2009000339958, which was corrected by a correction assignment recorded

September 17, 2013 in CRFN 2013000380865 . Plaintiff is the holder of the Note and Mortgage

as plaintiff has been, and remains, in physical possession of the Note, since prior to the

commencement of this proceeding. A Note and Mortgage may be transferred by either a written

assignment or the physical delivery of the Note prior to commencement of the foreclosure action.

The Mortgage passes with the debt as an inseparable incident. *See* Flyer v. Sullivan, 284 A.D.

697, 134 NYS2d 521 (1st Dept. 1954); Mortgage Electronic Registration Sys. Inc. v. Coakley, 41

AD3d 674, 838 NYS2d 622 (2nd Dept. 2007); *See also* In Re Feinberg, 442 BR 215 (SDNY

2010). Copies of the Note, Mortgage and assignments are annexed hereto as **Exhibit "B"**.

3.      As stated in the affidavit of Anisha N. Sims submitted herewith, prior to the commencement of this action, a breach letter was sent in accordance with the subject Mortgage. A copy of the breach letter is annexed hereto as **Exhibit "C"**. The letter was mailed via first class mail.  Service by mail is deemed to be complete upon deposit of such papers in the mail. <u>Watt v. New York City Transit Authority</u>, 97 A.D.2d 466,  467 N.Y.S.2d 655 (2d Dept 1983). The notice states the default, the amount needed to cure the default, the time frame by which the default must be cured, the consequences of defendant's failure to timely cure the default and defendant's right to assert any defenses to a foreclosure proceeding.  Thus, the notice fully meets all the requirements as outlined in paragraphs 15 and 22  of the Mortgage.

4.      Pursuant to the affidavit of Anisha N. Sims the 90-day pre-foreclosure notice **was not** sent to the borrower because the Complaint was filed before January 14, 2010, and the loan exceeded Fannie Mae's conforming loan amount.  A copy of Fannie Mae's Historical Conventional Limits is annexed hereto as **Exhibit "D"**. Because the Plaintiff was not required to send a 90-day pre-foreclosure notice in this matter, it did not make any filing regarding said notice with the superintendent of banks.

5.      This action was commenced by the filing of the Summons, Complaint and Notice of Pendency in the  Kings County Clerk's Office on October 8, 2009. The Notice of Pendency contained correctly and fully all of the particulars required by law to be stated and since the filing of said Notice of Pendency, the Summons and Complaint have not been amended in any manner. A copy of the Notice of Pendency is annexed hereto as **Exhibit "E"**.

6.      All of the defendants were duly served with copies of the Summons and Complaint and the foreclosure homeowner's notice in accordance with RPAPL §1303.  The

Summons contained the language required by RPAPL §1320. Moreover, the foreclosure

homeowner's notice, required by RPAPL §1303, was printed on its own page, in bold 14 point

type with the title of the notice in bold, 20 point type on colored paper. The colored paper was

different than the color of the page upon which the Summons and Complaint were printed.

Copies of the affidavits of service are annexed hereto as **Exhibit "F"**.

      7.     None of the defendants, except PNC Bank, N.A. successor by merger to National

City Bank, N.A. appeared, answered or made any motion raising any objection to the Complaint

and are in default.   Their time to answer or appear was not extended by Court order or

stipulation.  However, they are entitled to notice of this application pursuant to CPLR § 3215 (g).

The defendant, PNC Bank, N.A. successor by merger to National City Bank, N.A., appeared in

this action. The Notice of Appearance is  annexed hereto as **Exhibit "G"**.

      8.     The defendant, Capital Resources Corp., is no longer a necessary party defendant.

Plaintiff is further unaware of any John Doe defendants.  Plaintiff respectfully requests that this

action be discontinued as against the defendant, Capital Resources Corp., and the John Doe

defendants and the caption of the action be amended accordingly.

      9.     A review of the recorded Mortgage annexed hereto as Exhibit B, revealed that

the  legal description was not affixed to said document.  The legal description contained in the

deed dated December 14, 2005 and recorded December 21, 2005 in CRFN 2005000701374

accurately describes the property. Said Deed is attached hereto as **Exhibit "H"**.  The deed and

the Mortgage were intended to describe the same property and thus reformation of the Mortgage

is warranted.  Therefore, it is respectfully requested that the Mortgage be amended *nunc pro tunc*

to add to the legal description as contained in the subject deed.

      10.    Plaintiff has complied with the requirements of CPLR §3215(g)(3)(I) by mailing

the required additional notice to those individual defendants who have defaulted. The original

Affidavit of Additional Mailing is annexed hereto as **Exhibit "I"**.

11.     Settlement conferences were held in this matter on March 17, 2010, May 19,

2010, June 24, 2010, July 7, 2010, August 16, 2010, September 22, 2010 and October 28, 2010

and plaintiff was permitted to proceed with foreclosure. Annexed hereto as **Exhibit "J"** is the

Judicial Hearing Officer's Directive, dated October 20, 2010 , releasing this matter from the

foreclosure settlement conference part.

12.     On December 30, 2011, Frenkel, Lambert, Weiss, Weisman & Gordon, LLP were

substituted as counsel for plaintiff. A copy of the filed Consent to Change Attorneys is annexed

hereto as **Exhibit "K"**.

13.     Due to damage from Hurricane Sandy, this matter was placed on a FEMA hold

from November 28, 2012 until March 18, 2013.

14.     This office has filed simultaneously with the Court the required Supplemental

Attorney Affirmation pursuant to the Administrative Order of the Chief Administrative Judge of

the Courts AO/431/11 directing plaintiffs' counsel in residential Mortgage foreclosure actions

file a supplemental affirmation. A copy is annexed hereto as **Exhibit "L"**.

15.     On or about July 18, 2013, your affirmant's office received notice of a status

conference scheduled for August 1, 2013. A copy of the status conference notice is annexed

hereto as **Exhibit "M"**.

16.     Upon information and belief, at a status conference on August 1, 2013, the Hon.

Lawrence Knipel purported to dismiss this action without prejudice pursuant to CPLR § 3215(c).

17.     Due to an inadvertent error, a truncated version of plaintiff's name was used when

the Summons and Complaint was filed. Plaintiff respectfully requests that the plaintiff's name

be amended, *nunc pro tunc*, to U.S. Bank National Association, as Trustee for Banc of America

Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F and that the caption be

amended accordingly.   Per CPLR § 2001, "at any stage of an action, including filing of a ...

Summons and Complaint ... the Court may permit a mistake, omission, defect or irregularity...

to be corrected [or]... if a substantial right of a party is not prejudiced, the mistake, omission,

defect or irregularity shall be disregarded..."

## THE COURT FAILED TO COMPLY WITH REQUIRED PREDICATES PRIOR TO DISMISSING THIS ACTION

18.    The appellate Courts have held that a court's power to dismiss a Complaint sua

sponte is to be used sparingly and only in extraordinary circumstances. US Bank, NA v.

Emmanuel, 83 AD3d 1047, 921 NYS2d 320 (2d Dept 2011); HSBC Bank USA, NA v. Taher,

104 A.D.3d 815, 962 N.Y.S.2d 301 (2d Dept 2013).

19.    Dismissal of a Complaint for want of prosecution is not warranted where the court

or a party seeking such relief does not make a written demand of plaintiff to resume prosecution.

Doe v. Chenango Valley Central School Dist., 92 A.D.3d 1016, 938 N.Y.S.2d 360 (3d Dept

2012).  A trial court's order directing plaintiff to file a Note of issue is defective if it does not

provide the requisite statutory notice as required by CPLR 3216(b)(3).  Id.; see also Dergousova

v. Long, 37 A.D.3d 645, 830 N.Y.S.2d 330 (2d Dept 2007); Klevanskaya v. Khanimova, 21

A.D.3d 350, 798 N.Y.S.2d 912 (2d Dept 2005).

20.    CPLR 3216 permits a court to dismiss an action for want of prosecution only after

the court or the defendant has served the plaintiff with a written notice demanding that the

plaintiff resume prosecution of the action and serve and file a Note of issue within 90 days after

receipt of the demand, and also stating that the failure to comply with the demand will serve as

Note of issue was jurisdictionally defective, as it was not served by registered or certified mail and service was not acknowledged, thus resulting in prejudice to a substantial right of the plaintiff."). Jurisdictional defects may not be disregarded by the Court. See Reed v. State of New York, 147 A.D.2d 767, 537 N.Y.S.2d 350 (3d Dept 1989); Baggett v. State of New York, 124 A.D.2d 969, 508 N.Y.S.2d 823 (4th Dept 1986).

23.    Your affirmant's office is not in receipt of a Notice pursuant to CPLR 3216. As such, in the absence of proof that the Court sent such a notice via registered or certified mail, this action must be restored to the calendar.

24.    Furthermore, plaintiff is not in receipt or aware of an Order dismissing this action.

25.    Based on the foregoing, it is respectfully submitted that the Plaintiff has operated in good faith and has not abandoned this action.

26.    No previous application has been made for the relief requested herein.

WHEREFORE, it is respectfully requested

1. An Order to restore the action to the court's calendar as an active matter; and

2. An Order vacating the dismissal of Hon. Lawerence Knipel dated August1, 2013; and

3. An Order, pursuant to RPAPL §1321, appointing a referee to ascertain and compute the amount due to the plaintiff in this action for principal and interest on the Note and Mortgage used upon and set forth in the Complaint and for any other expenses plaintiff has or will incur affecting said premises and that said sums so paid or to be paid be added to the sum otherwise due to the plaintiff; take proof and to examine the plaintiff or the agent of the plaintiff under oath as to any payments which have been made if any defendant be deemed an infant or absentee; to ascertain and compute the amount due to plaintiff in accordance with the Complaint herein and to examine

and report whether Mortgaged premises can be sold in one parcel; and that said referee make his/her report with all convenient speed; and

4. An Order amending the caption excising defendants, Capital Resources Corporation and the John Doe defendants; and

5. An Order amending, *nunc pro tunc*, plaintiff's name to U.S. Bank National Association, as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-F, and amending the caption accordingly; and

6. An Order amending the Mortgage, *nunc pro tunc*, by adding the legal description from the deed; and

7. For the relief demanded in the Complaint; and

8. For such other and further relief as this court may deem just and proper.


Dated: Bay Shore, New York
       January 27, 2014

                                        _____
                                        Kent O. Markgraf

## CERTIFICATION BY ATTORNEY

Kent O. Markgraf , an attorney duly admitted to practice law before the Courts of the State of New York, an associate with the firm of Frenkel, Lambert, Weiss, Weisman & Gordon, LLP, attorneys for the Plaintiff herein, pursuant to Uniform Rule Section 130-1.1-a, states as follows:

1.    I hereby certify, under the penalty of perjury and as an officer of the Court, that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the within paper or the contentions therein are not frivolous·as defined in subsection (c) of section 130-1.1, including that the substance of the factual statements therein are not false.

Dated: Bay Shore, New York
      January 27, 2014

 

Kent O. Markgraf
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP
Attorneys for Plaintiff
20 West Main Street
Bay Shore, New York 11706
(631) 969-3100
Our File No.: 01-051186-F00

# EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

US Bank National Association, as Trustee for Mortgage Pass-
Through Certificates, Series 2006-F ,

                              Plaintiff,

              -against-

Michael Krichevsky, Capital Resources Corporation, National
City Bank, New York City Environmental Control Board, New
York City Parking Violations Bureau, New York City Transit
Adjudication Bureau,

                            Defendants.

**AFFIDAVIT OF
MERIT AND
AMOUNTS DUE AND
OWING**

**Index No.: 25477/09**

                    Mortgaged Premises: 4221 Atlantic Avenue Brooklyn, NY 11224
                    Block and Lot information numbers: 7026 53

STATE OF North Carolina )

COUNTY OF Mecklenburg ) SS.:

    Anisha N. Sims, being duly sworn, deposes and says:

1. I am Vice President Loan Documentation of Wells Fargo Bank, N.A., the servicer for the
   Plaintiff and as such am authorized to execute this affidavit and to make the
   representations contained herein.

2. I have access to the business records relating to the loan at issue herein, which are
   maintained in the course of regularly conducted business activities. I make this affidavit
   based upon my review of the facts contained in those records.

3. U.S. Bank National Association, as Trustee for Banc of America Funding Corporation
   Mortgage Pass-Through Certificates, Series 2006-F is in possession of the Promissory
   Note. The Promissory Note is duly indorsed to U.S. Bank National Association, as
   Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates,
   Series 2006-F.

001-NY-V8

4. There is in fact a default under the terms and conditions of the Promissory Note and Mortgage, because the May 1, 2009 and subsequent payments were not made.

5. The Plaintiff was not required to send the borrower a 90 day pre-foreclosure notice because in accordance with the statutory requirements in effect prior to January 14, 2010, the loan exceeded Fannie Mae's conforming loan amount.

6. Because the Plaintiff was not required to send a 90 day pre-foreclosure notice in this matter it did not make any filing regarding said notice with the superintendent of banks.

7. In accordance with the provisions of the Mortgage, a notice of default was mailed to the mortgagor(s) at the last known address provided to this institution by the mortgagor. The default stated in said notice was not cured. A copy of the notice of default is attached to this application.

8. Based on the default, Plaintiff elected to call due the entire unpaid principal balance together with interest and disbursements, including reasonable attorney fees and costs, allowable under the terms of the Promissory Note and Mortgage.

The total amount due the Plaintiff on said Note through July 19, 2013 is $932,147.45; which breaks down as follows:

| | | |
|---|---|---|
| Principal | | $746,256.13 |
| Interest | | $144,337.93 |
| From | 04/01/2009 to 12/31/2010 @6.50%    $84,886.63 | |
| | 01/01/2011 to 12/31/2011 @3.00%    $22,387.68 | |
| | 01/01/2012 to 12/31/2012 @3.25%    $24,253.32 | |
| | 01/01/2013 to 07/19/2013 @3.125%   $12,810.30 | |
| Pre-acceleration Late Charges | | $323.36 |
| Hazard Insurance Disbursements | | $22,073.34 |
| Tax Disbursements | | $19,156.69 |
| Property Inspections/Preservation | | $0.00 |
| PMI/MIP | | $0.00 |
| Other (specify charges/fees) | | $0.00 |

001-NY-V8

| | |
|---|---|
| Escrow Balance Credit | $0.00 |
| Credits to Borrower | $0.00 |
| | |
| Total | $932,147.45 |

Per diem interest in the amount of $63.89 will accrue on the principal from July 19, 2013 to the next interest rate change date and accrue thereafter in accordance with the variable rate as set forth in the Note.

THIS SPACE INTENTIONALLY LEFT BLANK

BY _A.N.S_

001-NY-V8

# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F,<br>3476 Stateview Boulevard<br>Fort Mill, SC 29715 | INDEX NO. 25477/2009 |
| Plaintiff, | **CROSS-MOTION TO DISMISS FOR FAILURE TO PROSECUTE AND OTHER ALTERNATIVE RELIEFS** |
| -against- | |
| Michael Krichevsky, et al | **Trial by Jury Demanded** |
| Defendants. | Justice Bert A. Bunyan |

---

COUNSELORS:

**PLEASE TAKE NOTICE**, that upon the annexed affidavit of Michael Krichevsky, Sui Juris, dated the 2 day of January, 2015, and upon all the pleadings and proceedings heretofore had herein, the undersigned will cross-move before this Court at an IAS Part 8, Room 438, at the Courthouse located at Civic Center and Montague Street, Brooklyn, New York on the 2 day of November, at 9:30 a.m. in the forenoon of that day or as soon thereafter as counsel can be heard for an order granting the relief requested in this Omnibus Cross-Motion as follows:

.1.   Take judicial notice of Defendant's status as alive man, not juristic entity or legal fiction such as corporation, trust or estate MISLEADINGLY spelled MICHAEL KRICHEVSKY in all capital letters on caption of this action.

2.   As a first step, direct plaintiff's attorney, FRENKEL LUMBERT WEISS WEISMAN & GORDON, LLP, to show authority per New York state agency laws to represent Plaintiff by disclosing identity of the parties to retainer per CPLR 3013 and 3015(b) and order continuance to permit disclosure. Direct attorney representing corporation or trust in court to appear with corporate charter and/or other forming documents

to rule out champerty, verify Plaintiff's status, name, address and requirement to post a non-resident bond.

3.    Per CPLR 3024(b) strike affidavits, affirmations, assignments and consent to change attorney as sham, false and prejudicial. Per 2214 (c) papers to be produced on notice, 2218 trial of issue raised on motion.

4.    Dismiss the action with prejudice per CPLR §3211 (a) (1), (2), (3), (5), (7), (8),(10); §5015 upon the grounds of fraud, misrepresentation and misconduct and per unclean hands doctrine.

5.    Additionally and alternatively, dismiss with prejudice **NUNC PRO TUNC** the action per CPLR §3216 for failure to prosecute and doctrines of equitable estoppels and laches.

6.    In the event this motion is not persuasive, give Defendant time to produce an Answer and compel acceptance per CPLR 3012(d).

7.    And for such other and further relief as to this Court may seem Just and Equitable, including the costs of the cross-motion.

This action is not on the trial calendar.


Dated: Brooklyn, New York
January 13, 2015

_____
Michael Krichevsky, Sui Juris
4221 Atlantic Ave
Brooklyn, New York 11224
(718) 687-2300

FRENKEL LUMBERT WEISS WEISMAN & GORDON, LLP
Attorneys for Plaintiff
ONE WHITEHALL ST., 16TH FL.
New York, NY 10004

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

INDEX NO. 25477/2009

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
2006-F,
3476 Stateview Boulevard
Fort Mill, SC 29715

                       Plaintiff,

           -against-
Michael Krichevsky, et al

                  Defendants.

**AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTION TO RESTORE, AMEND
THE CAPTION AND PROCEEDINGS NUNC PRO TUNC AND IN SUPPORT OF
CROSS-MOTION FOR FAILURE TO PROSECUTE AND OTHER ALTERNATIVE
RELIEFS**

Michael Krichevsky, Sui Juris, states under the penalties of perjury:

1. I am alive man, the alleged Defendant in error in this action and the facts stated in this affidavit are within my personal, first-hand knowledge, and if called on as a witness, I could competently testify thereto.

2. I make this cross-motion in reply and opposition to the plaintiff's motion to restore foreclosure and amend caption.

3. This affidavit serves as a supplemental Reply to corrected Affirmation in support to Plaintiff's motion to restore and as an Affidavit in support of my cross-motion asking the Court to dismiss the complaint with prejudice or other just and equitable relief as set forth below.

4. Per CPLR 3015 I deny performance and occurrence, and object to presumptions/assumptions of the Authority and Authenticity or Validity of the following: Contract, Receipt of money as consideration, Note and Mortgage, including my authorized signature, lien, Assignments, Affidavits, Affirmations, Default, Debt, Consent to Change Attorney, Notarizations, signatures, anything else I could not think of due to inexperience and demand verification and proof of same. Without such proof or verification, this court has no personal or subject matter jurisdiction over me because the court does not

aid and abet fraud upon the court or operate in fraud. It can only adjudicate controversy between the real parties in interest – not interloper(s) posturing as real party. As such, the burdens of pleading and proof are on Plaintiff's attorney to show authority to represent, and that standing – legal capacity to sue exists.

5.    For this action to be just and fair against I as non-attorney, I must be informed of and demand that Plaintiff's attorney provide me with full disclosure of silent presumptions/assumptions of contract, consent, waiver of rights or any other silent presumptions/assumptions used or will be used against me – LAW OF THE CASE doctrine. Failure to do so would constitute fraud and deceit.

6.    I have never been presented with any sworn affidavits that would provide validity to Plaintiff's claim. It is my best and considered judgment that no such paperwork or affidavit exists. Should alleged plaintiff consider my position in error – they are welcome to prove me wrong to the jury.

7.    **COUNSELORS PLEASE TAKE NOTICE: SILENCE IS ACQUIESCENCE.** Failure to rebut this affidavit paragraph by paragraph and point for point infers a fact or argument in my favor. In *Morris v National Cash Register*, 44 S.W. 2d 433, the court clearly stated at point #4 that "uncontested allegations in affidavit must be accepted as true.", and the Federal case of *Group v Finletter*, 108 F. Supp. 327 states, "Allegations in affidavit in support of motion must be considered as true in absence of counter-affidavit."

8.    "Indeed, no more than [affidavit] is necessary to make the prima facie case." *United States v. Kis*, 658 F.2d 526, 536-37 (7th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982)

**PROCEDURAL HISTORY AND STATEMENT OF MATERIAL FACTS**

9.    Plaintiff started foreclosure on or about October-November 2009 by filing notice of pendency, summons, complaint and affidavits of service with this court.

10.    I was never served with the default letter, summons and complaint, but learned about lawsuit by accident from my attorney, Daniel Singer, who was handling my other, unrelated case. I appeared on

December 23, 2009, by motion ( CPLR 320 and 3012(d)) to extend time (**Exhibit A**), contacted Plaintiff's attorney Steven J. Baum, P.C. and requested extension of time to reply by stipulation. Attorney on the phone agreed, but under condition, that I waive jurisdictional defenses, which I refused. Plaintiff's attorney frivolously opposed my motion to extend time by the affirmation, **Exhibit B**, asking to dismiss my motion with prejudice.

11.  That affirmation is false for the reason explained below. Nonetheless, it acknowledges my appearance, awareness of and reservation of jurisdictional defenses, one of which is standing.

12.  On the hearing date, Plaintiff's attorney and I appeared. By that time, I prepared the motion to dismiss (**Exhibit C**), but did not have a chance to file it with the court and brought original with me to show the court that I wasted no time and ready to file it. I handed a copy of this motion to Plaintiff's attorney and told him that I intend to file it after the hearing. During the oral arguments and in the motion to dismiss, I averred:

> "The Court lacks personal jurisdiction over the Defendant due to Plaintiff's failure to serve process in accordance with Section 308 of the Civil Practice Law and Rules. Plaintiff did not send debt validation letter, did not comply with requirements of Paragraph 1303 of RPAPL. Plaintiff's affidavits of service constitute SEWER SERVICE (the term coined by New York Judiciary reflecting fraud). The address of 89 Fairview Avenue, New York, New York is not single-family house without an apartment number as it misleadingly appears from affidavit of service (**Exhibit D**), but Manhattan apartment building where Defendant (a) did not reside as claimed by process server Robert Winckelmann; and (b) there is no John Krichevsky in Defendants family either. This proves the process server did not go to this location and made up the facts in this affidavit. If copy of the complaint really mailed at this address -- it would be undeliverable or dumped on the floor of the hall. The second Affidavit of service by Jeffry Conocchioli (**Exhibit E**) fails to state that at the time of service at the address of 4221 Atlantic Ave, there was renovation going on (he must have seen it). There was no actual defendant' dwelling where he lived with the door where pleadings could be attached. That, again, proves that process server did not go to that location. Plaintiff knew from Defendant' conversations with the servicer that there is renovation going on. On the other hand, servicer knew where Defendant worked. What a better place to serve defendant than place of abode? All of the above makes me think that Plaintiff went out of its way in order to perform SEWER SERVICE and tried to obtain a default judgment."

13. Such conduct by plaintiff is prohibited by unclean hands doctrine. A "genuine inquiry into the defendant's whereabouts" must be made prior to resorting to "nail and mail" service. *See McSorley* v. *Spear*, 50 A.D.3d 652 (2d Dep't 2008). In this case, process server did not do due diligence to find my last known address 120 Oceana Drive West, Apt 5D in Brooklyn, which was on the servicer record. I also voiced my confusion as to the identity of the Plaintiff. As result, Hon. Bert Bunyan explained to me that my mortgage is in trust pool and immediately ordered parties to appear for mandatory settlement conference.

14. The confusion also exists as to who the Plaintiff is since I, as a man, never signed a contract with the Plaintiff as legal fiction (dissimilar things do not interact). Where is alive man or woman, or affidavit from witness who attended my closing? Additionally, I requested disclosure from Plaintiff's attorney to verify Plaintiff's standing to sue.

15. Back in 2008, before the instant litigation, there was North-Easter storm in New York, which damaged subject property. The damage uncovered asbestos on the roof of house during my attempt to repair the damage. New York Department of buildings ordered me to remove asbestos at my expense. Asbestos removal procedure essentially damaged the house even more than it was damaged due to the storm. I needed capital to renovate the house and applied for the loan Modification with my servicer, Wells Fargo Bank. In my hardship letter, I explained the situation and was hoping for some remedy and cooperation from the bank as, believed by me at that time, interested party not looking for default. At that time, I paid about $50,000 in interest from 2006 on the five years interest only note to Wells Fargo Bank by way of automatic electronic monthly payments through the account set up on Wells Fargo Bank's website. After waiting for about 90 days after submission of Modification package, I called Wells Fargo Bank representative to inquire about status of application. Representative told me that my line is not up and I have to wait a little longer. Representative also told me "of the record" that I should stop making monthly payments for at least

90 days to faster appear on "radar screen" of Modification Caseworker. After this conversation, I was not sure and confused by lack of logic and consulted a few real estate attorneys. They could not tell me anything specific and promised to call me back if they have any positive information. In about two month, I learned that my monthly electronic payment bounced back from Wells Fargo Bank. I attempted to enter Wells Fargo Bank's website in order to access my account, but, to my surprise, learned that my account has been deleted. I guessed that was the result of my conversation with Wells Fargo representative and decided to wait for an official response on my Modification application. I did not get any reply.

16.   Back to Settlement Part, still confused and trying to learn the law and procedure of foreclosure, I told the judge about my prior Loan Modification application been ignored. The judge told me that this time Plaintiff would reply. I complied with all directions of Settlement Part and sent the second Loan Modification package as directed. At that time, I hoped to get in touch with the "investor-creditor," decision maker to resolve the 2008 issue that I had before the litigation. However, as months went by, I haven't heard anything from Plaintiff's attorney, Steven J. Baum, P.C. Then I heard the news that this firm is under investigation for fraud, robo-signing and fabricated documents.

17.   I incorporate by reference herein all averments made in my January 25, 2010 Affidavit to Motion to Dismiss (**Exhibit C**) and Reply to Plaintiff's motion to restore, **Exhibit F**.

18.   In 2011, Wells Fargo Bank sent me yet another modification offer in complete ignorance of two priors. By that time, I was better educated on the subject of mortgage and foreclosure fraud and sent in reply my 16 pages QWR by certified mail, **Exhibit G**. In reply, I didn't even get an affidavit of merit from Anisha N. Sims, Vice President Loan Documentation of Wells Fargo Bank, N.A., or from any other 'Vice President Loan Documentation' for that matter, similar to attached to Plaintiff's motion to restore. Now, I really wonder whether in 2011 Wells Fargo Bank had any 'data specialists' – Vice Presidents on not Presidents or

Assistant Secretaries able to prepare and sign affidavit of merit.

## MOTION TO TAKE JUDICIAL NOTICE

19.  As I stated before, at all relevant times, Steven J Baum and Steven J Baum, P.C. were investigated by

both US Attorney's office and New York State Attorney General's office for fraud upon the court and

homeowners as foreclosure mill and documents fraud factory.

20.  In *Howlett v. Rose*, 496 US 356 (1990)- Supreme Court held:

> "Federal law is enforceable in state courts not because Congress has determined
> that federal courts would otherwise be burdened or that state might provide a
> more convenient forum — although both might well be true — but because the
> Constitution and laws passed pursuant to it are as much laws in the States as laws
> passed by the state legislature. The Supremacy Clause makes those laws "the
> supreme Law of the Land," and charges state courts with a coordinate responsibility
> to enforce that law according to their regular modes of procedure. "The laws of the
> United States are laws in the several States, and just as much binding on the citizens
> and courts thereof as the State laws are. The two together form one system of
> jurisprudence, which constitutes the law of the land for the State; and the courts of
> the two jurisdictions are not foreign to each other, nor to be treated by each other as
> such, but as courts of the same country, having jurisdiction partly different and
> partly concurrent." *Claflin v. Houseman*, 93 U. S. 130, 136-137 (1876); see
> *Minneapolis & St. Louis R. Co. v. Bombolis*, 241 U. S. 211, 222 (1916)

21.  Accordingly, I move this Honorable court to take mandatory judicial notice of applicability in instant

matter of the federal common law, judicial proceedings in federal courts such as settlements with US

Attorney by the biggest foreclosing banks and Steven J Baum, P.C. affecting me as member of class on

whose behalf prosecuting Attorneys initiated and settled proceedings.

22.  Additionally, I move this Honorable court to take mandatory judicial notice of the federal class action

cases of which I could have been a member in the past, but for, admittedly intentional refusal by FRENKEL

LUMBERT WEISS WEISMAN & GORDON, LLP to send me consent to change attorney, which misled

me into belief that action against me is abated.

23. I move this Honorable court to take mandatory judicial notice of applicability as similarly situated homeowner and victim in instant matter to the class action case CONCEPCION CAMPBELL v. STEVEN J. BAUM, ESQ. in Eastern District of New York. This action was settled, but I did not participate thinking that Steven J. Baum, P.C. abated foreclosure against me, therefore I have no damages and/or right to participate in action. However, procedural violations by Steven J. Baum, P.C. and Plaintiff in instant action match most of the factual allegations in actions mentioned above and constitute a custom, pattern and practice alleged in all of the above actions.

24. It is public knowledge through press releases and numerous articles in the media that Steven J Baum, P.C and banks settled wrongdoing claims with prosecutors and paid fines.

25. It is public knowledge that major banks issued press releases and nationwide Moratorium to stop foreclosure and cleanup their mess.

26. I am informed by sources mentioned in my reply affidavit, other foreclosure litigation files similarly situated to instant matter, public knowledge sources, prominent foreclosure defense Attorneys, and therefore allege that original Plaintiff could not lawfully prosecute foreclosure against me due to documentary fraud, invalidity of contract between parties, defects in documents and/or lack of standing and invalidity of claim.

27. This is why original Plaintiff represented by Steven J Baum, P.C settled wrongdoing and abated claim against me as a class member.

28. Upon the court's and my examination of the purported note produced by alleged owner, original owner sold its purported claim and note "without recourse" to, in my belief, undisclosed debt buyer for pennies on the dollar. "Without recourse" indicates to the court and debt buyer that no claim can later be made against the original owner (purported holder of the authenticated note and mortgage) as to authenticity and/or

legality of the claim and note. In addition, I discovered together with the court, note contain an area, which was "white out" thereby hiding other endorsement, which would be a notice and reason why it was sold "Without recourse" to the buyer. As the saying goes, "buyer beware."

29. I move this Honorable court to take mandatory judicial notice that this note is redacted ("white out"), or used before, and therefore void just like any bank check would be.

30. Alternatively, upon circumstantial evidence and logic, I believe that undisclosed debt buyer purchased an evidence of debt, or fabricated it, and is proceeding with collection activity posturing as original Plaintiff with the ownership of original note. Accordingly, I rebutted presumption of document's authenticity and legality of the claim against me and demand proof from Plaintiff.

## ARGUMENT: CONSENT TO CHANGE ATTORNEY IS VOID AND SHOULD BE QUOSHED TOGETHER WITH THE MOTION TO RESTORE AND AMEND CAPTION

31. Because Steven J. Baum, P.C. was disbanded due to settlement with prosecutors and agreement not to pursue its wrongful foreclosures, said firm committed fraud upon this court by deceitfully misleading the court and I through signing substitution of counsel in violation of settlement agreement to abate illegal practice.

32. Notwithstanding that consent to change attorney (**Exhibit H**) was never served on me, which is violation of settlement agreement with prosecutors to stop fraudulent practice – it is void for fraud. This document is not New York Notary Law compliant and shows that on December 16, 2011 Assistant Vice President Meryl Ponyman signed consent on behalf of US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F. According to caption of this case, Ponyman's employer is located at 3476 Stateview Boulevard, Fort Mill, SC 29715. However, her signature was notarized three days later – on December 19, 2011 in Texas. Did she fly from

South Carolina to Texas just for the notary? As such, the notary committed criminal act and consent to

change attorney is complete fabrication.

33.  In fact, in 2010 I had numerous counterclaims, cross-claims and third-party claims against the property

seller, violation of FDCPA against original Plaintiff and Steven J. Baum, P.C:, purported servicer Wells

Fargo and purported lender Fairmont finding Ltd. with statute of limitation might have expired. Therefore,

even if this motion to restore filed by the rightful party, this motion should be quashed based on failure to

prosecute and doctrine of laches.

34.  The shadow Plaintiff (US BANK) tells the court that creditor is **Banc** of America. How clever, change

one letter from K to C in the word BANK and you have different company to play a SHELL GAME. Now,

by this instant motion to restore, the essentially NEW Fictitious Plaintiff bamboozles the court and I by

saying essentially the following:

> "OOPS, …we made a big mistake. We never owned the Note or the Mortgage and
> the papers the Court relied upon since 2009 are a little wrong and if it pleases the
> Court, let us go back in time and pretend we did not commit fraud. Let's pretend
> that we did it right this time so we can finish this foreclosure and steal the house we
> have no right to steal. Oh, and by the way, our corporate name and business address
> are little different from the Plaintiff-corporation's that was on the caption of
> original complaint. But, let's pretend that we are not different corporation located
> at different address. Just let's change the caption of this action and let referee start
> stealing the house"

**ARGUMENT: the action must be dismissed per CPLR §3216 for failure to prosecute and doctrine of**

**laches.**

35.  US Bank National Association v. Emmanuel, 83 AD 3d 1047 - NY: Appellate Div., 2nd Dept. 2011

"the plaintiff, allegedly the holder of the mortgage and note, commenced this action to foreclose the

mortgage."

36. Even if, which is not admitted and only for the sake of argument, I did not appear in this action as plaintiff claims, Plaintiff did not timely move for default judgment within the year as required by CPLR?

37.   which was the reason that they did not proceed with the foreclosure against me.

38. Pursuant to CPLR § 5015 to have the above captioned action dismissed upon the grounds of fraud, misrepresentation and misconduct.

39. Upon my personal, parallel investigation said Firm and the original Plaintiff attempted to commit fraud against the court and I by using well-known robo-signer Elpiniki M. Bechakas, Esq., employee of Steven J. Baum, P.C and Pillar Processing LLC – foreclosure mill. Elpiniki M. Bechakas, Esq. pretended to be an employee of the bank who executed the assignment of mortgage

40. Demand the "Plaintiff" appear. Because the 6th Amendment secures that no person will be deprived of life, liberty or property without due process of law. Therefore, the "Plaintiff" must appear and state he/she is owed a debt, the debtor must be given the right to challenge this debt for "validation" 15 USC 1692g. Only an "injured party" can claim a debt is owed. "Imaginary persons" can not appear or give testimony and can not be the "Plaintiff" of any cause of action. Challenge the attorney as a "Foreign Agent" 22 USC 611 acting for a "Foreign State" (Corporation) who has commenced the action in violation of the 11th Amendment. Demand dismissal for lack of jurisdiction.

41. Note: Every "Foreclosure" can be beat by this simple method. When a corporation receives a "Promissory Note" signed by you they deposit it and receive the amount plus additional money for the purchase of their contract, by the Federal Reserve Bank. The "Promissory Note" once "monetized" is removed from circulation and can not be enforced. Therefore a copy of your note is not admissible, only the "original" will do to establish right to property. Demand it, it is your right to its return if "Foreclosure" is granted.

42. No attorney can appear in court without the physical human being he represents. "Agents can not testify for principals." Challenge every witness to prove they are the principal, by asking for their Driver's Licenses, proving they are the "principal" i.e. "BANK OF AMERICA". If they are not, demand their testimony be removed from the record as "Hearsay" testimony. An imaginary person can not appear no agent can speak for them. All agents are defeated by this process.

43. **Bank did not lend me any money**

**ARGUMENT: LACK OF JURISDICTION DUE TO IMPROPER SERVICE OF PROCESS OR NO SERVICE AT ALL**

44. I deny the ¶ 6 of counsel's affirmation, to wit, "all of the Defendants were duly served with copies of the summons and complaint and a foreclosure homeowner's notice in accordance with RPAPL §1303."

**ARGUMENT: the action must be dismissed because the Plaintiff has not legal capacity to sue per CPLR §3211 (a) (3)**

45. I aver that their promissory note attached to the instant motion is fabrication and forgery by Wells Fargo using their infamous forgery manual **(exhibit B)** or other "shadow" entity. Upon my personal, parallel investigation, Fairmont Finding Ltd (Fairmont), who alleged to me to be the New York State Banker and Lender on said note upon signing by me of the Uniform Mortgage application and the note was not the banker and lender, but was a loan broker. Accordingly, Fairmont deliberately misrepresented to Defendant its status as lender authorized to enter into a contract. Due to fraud in the inducement of the contract, Fairmont Finding did not have authority to personally enter into contract with Defendant and did not have authority to assign any note and mortgage to Wells Fargo as it states on the believed by me fabricated note and mortgage Therefore, the contract is void due to fraud and misrepresentation at the inducement.

46. Steven J. Baum, P.C. attempted to commit fraud upon the court and against me by using well-known robo-signer Elpiniki M. Bechakas, Esq., employee of said foreclosure mill.

47. As evidenced from the caption of the case, the name of the Plaintiff is – US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-F, 3476 Stateview Boulevard, Fort Mill, SC 29715 (US BANK). And as evidenced by my QWR under this address resides the servicer, Wells Fargo. Accordingly, representative of Wells Fargo, while located in the same building as alleged Plaintiff, was unable to secure the copies of the documents requested in my QWR and is still in default. When Steven J Baum P.C. filed complaint, they did not attached a copy of the note and mortgage to it. However, after investigation of Steven J. Baum, P.C. started and I requested from Wells Fargo, inter alia, the copies of the very same note and mortgage attached to the Plaintiff's motion – Wells Fargo did not dare to send me the same fabricated documents after they have been alerted to that fraudulent issue. Therefore, allegation in the complaint that US BANK was owner and holder of the note and mortgage was false, misleading the court and I. Accordingly, US BANK "has not legal capacity to sue" and the action must be dismissed.

## ARGUMENT: SWORN STATEMENTS AND AFFIDAVITS FILED IN COURT ARE INCONSISTENT WITH FACTS OR PRIOR SUBMISSIONS AND STATEMENTS – FRAUD AND PERJURY.

48. The record of this proceeding show that foreclosure mill Frenkel, Lambert, Weiss, Weisman & Gordon, LLP (Frenkel) in no way different than foreclosure mill Steven J. Baum, P.C. that was disbanded in 2010.

49. Frenkel took the same fraudulent and perjurious affidavits prepared for/or by Steven J. Baum, P.C. and started using them against me without verification of its accuracy. Attorneys of Frenkel created affirmations under penalty of perjury relying on Steven J. Baum, P.C. fraudulent documents. For example, AFFIDAVIT

OF VACANCY is contradicting to affidavit of service by same process server, Jeffry Conocchioli, **Exhibit**

E. In affidavit of vacancy, he attempted service at 4221 Atlantic Ave., Brooklyn, NY on October 14, 2009,

and states: "There are no "John Doe" defendants at the aforementioned residence and the residence is

vacant." This is completely consistent with my averments above regarding renovation of house. However,

the second affidavit of service completely contradicts or ignores his statement that the residence is vacant.

In the second affidavit of service, he states that on October 30, 2009, he affixed the summons and complaint

to the door, making two prior trips. However, there is no door and I have witnesses to back it up. Why would

Mr. Conocchioli make three trips at the vacant residence to personally serve me knowing that the am not

there? And the answer is simple – Mr. Conocchioli did not make these trips. Someone else prepared and

signed affidavit on behalf of Mr. Conocchioli. The signatures on these affidavits do look different. Should I

coin the term ROBO-SERVER? I wouldn't be surprised to learn that these affidavits of service were

prepared in accordance with infamous Wells Fargo document fabrication manual by Steven J. Baum, P.C.

in a similar fashion that assignments of mortgage were prepared by well-known robo-signer Elpiniki M.

Bechakas, Esq., employee of Steven J. Baum, P.C. Moreover, there were other Robo signer's signing the

name of Elpiniki M. Bechakas, because signatures differ substantially from each other. In fact, my case is

mirror image of the case *US Bank National Association v. Emmanuel*, 83 AD 3d 1047 - NY: Appellate Div.,

2nd Dept. 2011, where Judge Schack explains the fraud of Steven J. Baum, P.C. Judge Schack ruled that US

BANK does not have standing and dismissed action with prejudice.

50.  The copies of purportedly my mortgage and note attached as exhibits to motion to restore are different

from note I examined in court. The copies contain black spots, which I do not recall seeing on the originals

I signed. Whiteout, black spots – evidence tampering?

51. The Notice of Pendency, Foreclosure Complaint and affidavits attached thereto were fictitious, false, and fraudulent legal documents filed in the Court and County Clerk's office under penalty of perjury.

52. New York Federal and State Courts consistently hold that a "mortgagee" that files a foreclosure complaint in the courts without standing equates to fraud.

53. New York criminal statutes relating to false filings and perjury exist to protect citizens and the judiciary from false filings, including §210.05:A person is guilty of perjury in the third degree when he swears falsely;§ 210.35: A person is guilty of making an apparently sworn false statement in the second degree when (a) he subscribes a written instrument knowing that it contains a statement which is in fact false and which he does not believe to be true, and (b) he intends or believes that such instrument will be uttered or delivered with a jurat affixed thereto, and (c) such instrument is uttered or delivered with a jurat affixed thereto; and (c)§ 175.35 Offering a false instrument for filing in the first degree-A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority ..., he offers or presents it to a public office, public servant, public ...with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority ...; and §175.30 A person is guilty of offering a false instrument for filing in the second degree when, knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

54. Below is my table of factual side-by-side rebuttal of Plaintiff's attorneys numerous affirmations in this matter under penalty of perjury.

"When an honest man, honestly mistaken, comes face-to-face with undeniable and
irrefutable truth; he is faced with one of two choices, he must either cease been mistaking
or cease being honest." Amicus Solo

| OBJECTIONS AND IMPEACHMENT OF PLAINTIFF'S ATTORNEYS SWORN STATEMENTS OF FACTS AND OTHER AFFIDAVITS SIDE BY SIDE | |
|---|---|
| PLAINTIFF'S ATTORNEYS AND OTHER PERSONS PATTERN OF FALSE, MISLEADING, PERJURIOUS, INCONSISTENT, CONTRADICTORY STATEMENTS OF FACTS – JUDICIAL ESTOPPEL, UNCLEAN HANDS, DELIBERATE IGNORANCE OF FACTS LISTED IN THE RIGHT COLUMN | GROUND FOR OBJECTION: TRUTH AND/OR PLAINTIFF'S ATTORNEYS IGNORED FACTS – DEFENDANT'S VERSION OF FACTS AND EVIDENCE |
| Attorney, Patricia M. Esdinsky, from Steven J. Baum, P.C. stated in her affirmation in opposition to my motion to extend time ¶5: "The Defendant was served pursuant to CPLR 308(2), when a licensed process server served upon the Defendant's family member, John Krichevsky, a copy of the Summons and Complaint on November 5, 2009, and followed up by mailing the Summons and Complaint on November 9, 2009..." 's | I dare attorney to show that John Krichevsky exists, member of my family and/or ever resided at 89 Fairview Ave. in Manhattan. Which apartment door bell did process server ring to see John Krichevsky? Facts: the address of 89 Fairview Avenue, New York, New York is not single-family house without an apartment number as it misleadingly appears from affidavit of process server Robert Winckelmann (Exhibit D), but Manhattan apartment building where Defendant (a) did not reside as claimed; and (b) there is no John Krichevsky in Defendants family either. If copy of the complaint really mailed without apartment # – it would be undeliverable and dumped on the floor of the entrance hall as often is a case. |
| Kent O. Markgraf, Esq. from Frenkel in his affirmation to motion to restore, made the following statement: | Upon information and belief, Steven J. Baum, P.C. never made any settlement offer as directed. Neither court, nor attorney notified |

| | |
|---|---|
| "Settlement Conference Held March 17,2010, May 19,2010, June 24,2010, July 7,2010, August 16, 2010, September 22,2010 and October 28,2010 defendant failed to appear, matter released from conference part" | me about settlement conferences scheduled. **This statement is misleading the court.** If the Plaintiff's attorney thinks that my statement erroneous and I knowingly failed to appear and defend, let them prove otherwise. |
| If not specified otherwise, below are statements of Kent O. Markgraf, Esq. In ¶ 2: An assignment was than executed on August 25, 2009 into US Bank, National Association, by an which was recorded on October 19, 2009 as CRFN 2009000339958, which was corrected by a correction assignment recorded September 17, 2013 in CRFN 2013000380865. Plaintiff is the holder of the Note and Mortgage as plaintiff has been, and remains, in physical possession of the Note, since prior to the commencement of this proceeding. A Note and Mortgage may be transferred by either a written assignment or the physical delivery of the Note prior to commencement of the foreclosure action. Copies of the Note, Mortgage and assignments are annexed hereto as Exhibit "B." | Misleadingly, attorney does not state that it was only assignment of mortgage. However, the record demonstrates that Mr. Markgraf has produced no evidence, documentary or otherwise, that U.S. Bank is the rightful holder of the Note. See *Carpenter v. Longan*, 83 U.S. at 274 (finding that an assignment of the mortgage without the note is a nullity). It is not custom and practice of the banks to physically deliver note without assignment or endorsement. Elpiniki M. Bechakas assigned mortgage to US Bank National Association, as Trustee for Mortgage Pass-Through Certificates, Series 2006-F, **180 East 5th St., St. Paul, MN55101.** An error in address or shell game? Further, by 'corrective assignment' Mr. Markgraf admits that the first mortgage assignment was bogus. As such, in 2009 Plaintiff commenced foreclosure without standing and committed fraud. The copies of purportedly my mortgage and note attached as exhibits to motion to restore are different from note I examined in court. The |

| | |
|---|---|
| | copies contain black spots (hiding something), which I do not recall seeing on the originals I signed. Whiteout, black spots – evidence tampering? |
| In ¶ 3: As stated in the affidavit of Anisha N. Sims submitted herewith, prior to the commencement of this action, a breach letter was sent in accordance with the subject Mortgage. A copy of the breach letter is annexed hereto as Exhibit "C". | Where is proof that this letter was sent? Even if it was sent, it was not to 120 Oceana Drive West, Apt 5D in Brooklyn – the address on the mortgage. Regardless, the letter was false (see ¶ 15 of this affidavit denying breach). |
| ¶ 6: All of the defendants were duly served with copies of the Summons and Complaint and the foreclosure homeowner's notice in accordance with RPAPL §1303. The Summons contained the language required by RPAPL §1320. Moreover, the foreclosure homeowner's notice, required by RPAPL §1303, was printed on its own page, in bold 14 point type with the title of the notice in bold, 20 point type on colored paper. The colored paper was different than the color of the page upon which the Summons and Complaint were printed. Copies of the affidavits of service are annexed hereto as Exhibit "F ". | This statement is false (see discussion and denial of service elsewhere above). This statement is inadmissible hearsay based on affidavits of service made by other people. |
| The legal description contained in the deed dated December 14, 2005 and recorded December 21, 2005 in CRFN 2005000701374 accurately describes the property. Said Deed is attached hereto as Exhibit "H". The deed and the Mortgage were intended to describe the same | Hearsay, attorney never saw the property. |

| | |
|---|---|
| property and thus reformation of the Mortgage is warranted | |
| ¶25: Based on the foregoing, it is respectfully submitted that the Plaintiff has operated in good faith and has not abandoned this action. | Because Frenkel intentionally never sent me consent to change attorney, it does not appear that Plaintiff operated in good faith. All other points are moot because I could not send a written notice demanding that the plaintiff resume prosecution. |
| Plaintiff's attorney, Barry M. Weiss from Frenkel in ¶ 3 states: "The defendant's assertions regarding the investigation of the law firm of Stephen J. Baum are patently irrelevant to this specific foreclosure action. Furthermore, the defendant offers no factual support for his utterly conclusory assertions of fraud and forgery or that the Affidavit of Merit by Anisha M. Sims submitted in support of the plaintiffs motion is false. Such conclusory assertions are insufficient to defeat the plaintiffs motion. See, e.g., Cohen Fashion Optical Inc. v. V&M Optical Inc.. 51 A.D.3d 619 (2nd Dept. 2008)." | **This foreclosure is not specific in context of custom, policy or practice by Steven J. Baum, P.C.** See *US Bank National Association v. Emmanuel*, 83 AD 3d 1047 - NY: Appellate Div., 2nd Dept. 2011 Facts: assignment of mortgage made by Pillar Processing, LLC, which was owned and operated by Steven J. Baum, P.C., was fraudulently signed by its employee-attorney, Elpiniki M. Bechakas (known robo-signer), interloper posturing as Assistant Secretary and Vice President of MERS. Said assignment, deceivingly hiding the fact that, really, she is the attorney working for Steven J. Baum, P.C. – Foreclosure Mill and document fraud factory. Those exact issues were raised in numerous decisions by New York judges who discovered this fraud and dismissed foreclosure actions. Today, it is public record. |
| In ¶ 4 states: If the defendant's unsupported assertions relate to an objection to the plaintiffs | The affirmation of Attorney, Patricia M. he he See affirmation of Attorney Patricia M. |

| | |
|---|---|
| standing, the defendant has waived any argument that the plaintiff lacked standing to commence the instant action because he failed to interpose an answer or file a timely pre-answer motion which asserted the defense of standing, pursuant to CPLR Rule 321 1(e). | Esdinsky, from Steven J. Baum, P.C., **Exhibit B**, and discussion of this issue in this **affidavit** above. |
| "Nonetheless, the affidavit by Anisha M. Sims submitted in support of the plaintiffs motion establishes that the plaintiff is in possession of the endorsed promissory note, and is thus the holder of the promissory note pursuant to UCC 1-201 (20) which defines holder as "a person in possession of an instrument indorsed to him or to his order or to bearer or in blank" As the holder, the plaintiff is entitled to enforce the promissory note in accordance with UCC 3-301 which provides that "the holder of an instrument. . .may . . . enforce payment in his own name." Furthermore, as a matter of law, the possession of the Note is accompanied by the interest in the Mortgage as incident to the note. See, e.g., Mortgage Electronic Registration Systems, Inc. v. Coakley. 41 A.D.3d 674 (2nd Dept. 2007); | the note fraudulently states that I received money in exchange for signing contract - show me when and who gave me the money. Wells Fargo was collecting money from me under false pretences. The note is not notarized or witnessed by anybody and could be created in photo shop using Wells Fargo's documents fabrication manual. The reason it is not notarized is because today it would be impossible to find the notary with the stamp going back to 2005. Also, I would like to know what happened to other original notes that I signed at closing? |

## ARGUMENT: REQUEST FOR JUDICIAL INTERVENTION IS FALSE

55. The unified Rules of the Trial Courts require that the RJI be filled. § 202.6 require that the RJI filing

party advice the Court of the Names and Addresses of all parties. The name and address of US BANK

NATIONAL ASSOCIATION, AS TRUSTEE FOR MORTGAGE PASS-THROUGH CERTIFICATES,

SERIES 2006-F, is 3476 Stateview Boulevard, Fort Mill, SC 29715. Internet search of this address reveals

the office of WELLS FARGO BANK. Accordingly, RJI prepared and filed by me based on false and

misleading information derived from the caption. Now, I question who the real Plaintiff is, what its name

and address.

**CONCLUSION**

56.  Attorneys filed false affidavits of service, bogus assignments, exhibits and in reliance on them filed

false affirmations. Attorneys admittedly intentionally did not notify me of consent to change attorney and of

the conference scheduled with judge Knitel falsely claiming I did not appear in action.

57.  Due to a pattern of inconsistencies, contradictions and outright fraud and perjury practiced by,

admittedly, shadow interloper(s), while attorneys are trying to bamboozle the court and I by trying to cover

up and make 'Plaintiff look good,' this action must be dismissed with prejudice against the plaintiff, as well

as their successors and assigns forever.

58.  All of the above makes me conclude that Plaintiff and/or its attorneys went out of their way to perform

SEWER SERVICE and tried to obtain a default judgment. Accordingly, defendant demands sanctions for

frivolous lawsuit pursuant to Part 130 of the Uniform Rules of Trial Courts against Plaintiff and its

attorneys for commencing and maintaining this frivolous action and awarding costs, disbursements and

attorneys' fees.

59.  This court should uphold integrity of judiciary and have the plaintiff's Motion for an Order Amending

the caption and all papers and proceedings amended nunc pro tunc <u>denied</u> in its entirety.

60.  In the alternative, to allow Michael Krichevsky to file an answer in connection with the above

captioned action and to allow him to proceed upon the merits to trial so that he may defend his interest in the

WHEREFORE, it is respectfully requested that this cross-motion be granted in its entirety, and that such other and further relief be granted as to this Court seems just and equitable, including the costs of this cross-motion.


Dated: Brooklyn, New York
       January 13, 2015

_____
Michael Krichevsky, Pro Se

Sworn to before me
~~on May 24, 2014~~ *13 January 2015*

_____
NOTARY PUBLIC

ALICE ASHER
NOTARY PUBLIC, State of New York
No. 01AS6062200
Qualified in Kings County
Commission Expires July 30, 2017

# EXHIBIT J

9/28/2017                    New York Supreme Court Case Detail

 **LAW**

**Michael Krichevsky**
My eLaw    [ Logout ]



eDocket    eWatch         eCalendar    eCopy







eWatch List

Case Details
Filings & Fees
Appearances
**Motions**
Attorneys
Print This Page

Search Again

**US BANK NATIONAL ASSOCIATION**
v.
**KRICHEVSKY, MICHAEL**

**SUPREME COURT
KINGS COUNTY**
Index Number: 25477/2009
Case Status: DISPOSED



By *MOTION*, originally made returnable on *NOVEMBER 04, 2015*, A PARTY FOR PLAINTIFF MOVED THIS COURT, in *SUBSEQUENT MOTION PART*, seeking the following relief: *DISCONTINUE ACTION* This motion was decided on *JANUARY 06, 2016* by Judge *BERT BUNYAN*

The Judge's decision is set forth in *A LONG FORM ORDER* This decision was presented to the County Clerk for entry and filing on *MARCH 24, 2016*. Please note that this presentation date is NOT THE DATE OF ENTRY. The Date of Entry, or filing date, by the County Clerk appears on an actual stamped copy of the decision/order. Click here to order a copy.

According to court records, the motion was decided as follows: As to the relief described as: *DISCONTINUE ACTION*; the motion is *GRANTED SETTLE ORDER ON NOTICE.*

**Complete Motion Appearance Activity:**
On *JANUARY 06, 2016*, an appearance was held on this motion before Judge *BERT BUNYAN* in *MOTION TRIAL TERM 8* The clerk marked the motion *MOTION DECIDED-OPEN APPEARANCE* with the following additional comments *GSON*; Position: 85

On *NOVEMBER 04, 2015*, an appearance was held on this motion before Judge *BERT BUNYAN* in *SUBSEQUENT MOTION PART* The clerk marked the motion *ADJOURNED*; Position: 20

Copyright © 2000-2017 e-Law, LLC. All rights reserved
Products | Contact Us | Price List | Terms and Conditions of Use

# EXHIBIT K



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

April 14, 2015

Michael Krichevsky
4221 Atlantic Avenue
Brooklyn, NY 11224

Subject: Acknowledgment - receipt of inquiry regarding account number 0149183295

Dear Michael Krichevsky:

Thank you for contacting us. We're writing to let you know that your inquiry has been received
and is currently being reviewed.

We expect to complete our research and provide you with the results on or before
April 22, 2015. In the event additional time is needed we will contact you.

We value your feedback and appreciate the time and effort you took to bring your inquiry to our
attention.

If you have questions during our review process, please call us at 1-800-853-8516. We are
available to assist you Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Leesa Whitt-Potter
Senior Vice President
Wells Fargo Home Lending

In order to remain compliant with state and federal guidelines, if you have engaged legal counsel for any litigation,
including bankruptcy, we will communicate with them going forward.

CC501/B1D/co1351882/ge3596540/cl708

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

# EXHIBIT L

Document drafted by and
RECORDING REQUESTED BY:
Wells Fargo Bank, N.A.
8480 Stagecoach Circle
MAC X3800-027
Frederick, MD 21701

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

The trusts identified on the attached Schedule A (the "Trusts"), by and through U.S. Bank National Association, a national banking association organized and existing under the laws of the United States and having an office at, One Federal Street, EX-MA-FED, Boston, MA 02110, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Wells Fargo Bank, N.A., ("Servicer"), having an office at 8480 Stagecoach Circle, Frederick, MD 21701 and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to Schedule A attached hereto.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements, short sale transactions and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed or other security instrument to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of

the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the applicable servicing agreements for the Trusts listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee for the Trusts listed on Schedule A.

Witness my hand and seal this 20th day of November, 2018.

NO CORPORATE SEAL

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

_____
Witness: Matthew Abrams

By: _____
Amy B. Byrnes, Senior Vice President

_____
Witness: William P. Murphy

By: _____
Maryellen Hunter, Vice President

_____
Attest: Jodi L. Scully, Vice President

## CORPORATE ACKNOWLEDGMENT

Commonwealth of Massachusetts

County of Suffolk

On this 20th day of November, 2018, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Amy B. Byrnes, Maryellen Hunter, and Jodi L. Scully, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Senior Vice President, Vice President, and Vice President, respectively of U.S. Bank National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____

        Paul J. Gobin

My commission expires: 7/16/2021

PRSRT FIRST-CLASS MAIL
U.S. POSTAGE PAID
Rochester, NY
IMS Direct

112  112  11224  **N3-110**

4102200227-132100267

11224

INDEX No. : 1:20-w02343-RRM

Michael Krichevsky
,221 Atlantic Ave
Brooklyn, NY 11224

718-687-2300



USPS

5/6

Duvalt, Gilman-LLP

& Lomb Place
ter, NY 14604